In re:                                    CASE NO.  6:09-bk-17926-KSJ

**PARADISE PALMS, LLC,**                  **CHAPTER 11**

     **Debtor.**          **EMERGENCY RELIEF REQUESTED**
_____/                **HEARING REQUESTED BY 12/11/09**

**EMERGENCY MOTION OF DEBTOR SEEKING ORDER: (A) AUTHORIZING THE
DEBTOR TO OBTAIN POST PETITION FINANCING FROM THE DIP LENDER ON
AN INTERIM BASIS PURSUANT TO SECTIONS 105 AND 364 OF THE
BANKRUPTCY CODE; (B) PROVIDING LIENS, SECURITY INTERESTS
AND SUPERPRIORITY CLAIMS TO THE DIP LENDER; AND (C) APPROVING
THE FORM AND METHOD OF NOTICE THEREOF AND REQUEST
<u>FOR EMERGENCY PRELIMINARY HEARING</u>**

**AND**

**CERTIFICATE OF NECESSITY OF
<u>REQUEST FOR EMERGENCY PRELIMINARY HEARING</u>**

   **PARADISE PALMS, LLC**, the debtor and debtor-in-possession in the above-captioned

case (the "Debtor"), by and through its undersigned counsel, and pursuant to sections 105 and

364 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules

2002, 4001, 6004 and 9014, *Federal Rules of Bankruptcy Procedure*, hereby files this motion

requesting authority to obtain credit, incur debt, and grant liens and requests an emergency

preliminary hearing on the motion (the "Motion").

   A.  The Motion seeks authorization and approval of the debtor-in-possession loan (the

"DIP Loan"), on the terms consistent with those set forth in the Commitment Letter (the

"Commitment Letter").  A copy of the Commitment Letter is attached as **<u>Exhibit "A"</u>** to the

original of the Motion and may be obtained upon request to the undersigned counsel and has

1

been served upon the secured lender and the United States Trustee with the Motion. The "DIP Lender" shall be EFO Financial Group, LLC ("EFO"). The advances made under the Commitment Letter shall be available, among other things, to pay Debtor's ordinary course ongoing operating expenses. Among other conditions precedent to the DIP Loan is that the Court shall have entered an order in form and content reasonably satisfactory to the DIP Lender.

     B.     The Motion seeks an order:

     (i)     That the allowed claims (the "DIP Superpriority Claim") of the DIP Lender under the DIP loan documents shall have priority, as provided for in Section 364(c) of the Bankruptcy Code over any and all other administrative expenses, except for a carve-out for unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(the "Carve-Out");

     (ii)     That the liens of the DIP Lender shall be, and be deemed immediately secured by, first-priority liens (the "DIP Liens"), as provided for in Sections 364(c) and (d) of the Bankruptcy Code, upon all the Debtor's property and all of the Debtor's real property, contract rights, general intangibles, property and proceeds of any kind, created or arising on or after the Petition Date (the "Property");

     (iii)     That a hearing (the "Hearing"), pursuant to Bankruptcy Rule 4001 shall be held on the Motion for this Court to consider entry of an order (the "DIP Loan Order") approving the DIP Loan, on an interim basis, as set forth herein and in the Commitment Letter. A copy of the proposed DIP Loan Order is attached to the original of this Motion and filed with this Court as **Exhibit "B"**.

     In support of its Motion, the Debtor respectfully represents as follows:

## BANKRUPTCY RULE 4001 SUMMARY OF RELIEF REQUESTED

Pursuant to Bankruptcy Rule 4001(c)(1)(B), a concise statement of material provisions of the proposed Commitment Letter and form of DIP Loan Order is as follows:

A. **Interest Rate**: A rate per annum equal to thirteen percent (13%). (*See* p.3, Commitment Letter)

B. **Maturity:** Twelve months after the date of the Closing of the initial advance of the Loan. (*See* p.2, Commitment Letter)

C. **Events of Default:** Failure to make payment when due, breach of any representations or warranty made by the Debtor, a material adverse change occurs with respect to the Debtor or the Property, any act that adversely affects the DIP Loan Order, or failure by the Debtor to comply in all material respects with each and all of the terms of any DIP Loan Order. (*See* p.6, Commitment Letter).

D. **Liens:** The DIP Lender shall have first priority liens under Sections 364 (c) and (d) on the Property as identified in the DIP Loan Order and Commitment Letter. (*See* p. 3-4, Commitment Letter).

E. **Borrowing Limits:** Up to principal amount of Eight Hundred and Three Thousand Nine Hundred and Fourteen Dollars ($803,914.00). (*See* p.1, Commitment Letter)

F. **Borrowing Conditions:** Debtor agrees that DIP Lender's obligation to open and fund the DIP Loan is conditioned on: (1) execution of final DIP loan documents; (2) filing the Motion in a timely manner; (3) approval of the Budget, as described below; and (4) there are no uncured default or event of defaults under the DIP loan documents. (*See* p.7, Commitment Letter).

G. **Priming Liens Under Section 364(d):** The DIP Lender shall have first priority liens under Sections 364 (c) and (d) on the Property as identified in the DIP Loan Order and Commitment Letter. (*See* p.4, Commitment Letter).

H. **Adequate Protection:** Debtor asserts that the preservation of the ongoing business and ability to keep the property operating provide adequate protection to the mortgage holder.

I. **Waiver of Automatic Stay:** The Order will provide that a hearing on a motion for automatic stay shall be heard on an emergency basis if any Event of Default is not cured within five (5) business days from receipt of the written notice given details the occurrence of an event default unless the Court holds that no event of default occurred. (*See* p.6, Commitment Letter).

J. **Section 506(c) Limitations:** Claims under 506(c) are not addressed.

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2. The Debtor continues to operate as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and this Court's order authorizing it to continue doing business as a debtor-in-possession.

## Background

3. On November 23, 2009 ("Petition Date"), the Debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code; no trustee has been appointed. The

Debtor continues to operate its business as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code. (Doc. No. 1).

4. The Debtor is the owner of partially developed real property in Osceola County that is/was to be used for the construction of townhomes and single family homes on the subject property (the "Property"). Through Debtor and certain affiliates, the Property also boasts a variety of amenities, including but not limited to: a state of the art clubhouse, housing a 47-seat movie theatre, gym, sauna, game room, card room, tiki bar, concierge desk, internet center, general store and restaurant. There is also a 5,000 square foot pool, compete with rock grotto, waterfalls, two spas, a waterslide, children's wading pool, water toys and over 17,000 square feet of deck space (the "Amenities"). The maintenance and operations of all the Amenities is paid from unit dues and club dues to the Debtor's affiliates.

5. As of the Petition Date, the Debtor owned the Amenities and a number of lots of partially developed real property.

6. Prior to the Petition Date, the Debtor previously reached an agreement with Lennar Homes, LLC ("Lennar") for the takedown of certain lots after pre-construction work was complete on the Property. The funds for the purchase of the lots was used to service the construction loan with the Debtor's lender, Seacoast Bank.

7. Instead of complying with its agreement with the Debtor, Lennar formed a separate entity to buy the mortgage and note on the Property from Seacoast at a substantial discount. With Lennar failing to comply with its agreement regarding the takedown of the lots, the Debtor was unable to make payments on the construction loan. The new entity formed by

Lennar to purchase the Seacoast obligation, Len Paradise, LLC, began a state court collection action against the Debtor.

**Relief Requested**

**A. Detailed Summary of Commitment Letter**

8.       By this Motion, the Debtor seeks the issuance and entry of an Order of this Court granting the Debtor the authority to obtain debtor-in-possession financing under the terms and provisions of the Commitment Letter and DIP loan documents, as defined in the Commitment Letter.  The salient provisions of the Commitment Letter are as follows:

a.       **Borrower:**  Paradise Palms, LLC.

b.       **DIP Lenders**:   EFO Financial Group, LLC.

c.       **DIP Loan**:  A first priority secured credit facility to be provided to the Borrower with a maximum credit amount of Eight Hundred and Three Thousand Nine Hundred and Fourteen Dollars ($803,914.00).

d.       **Maturity of the DIP Loan**:  Twelve months after the date of the closing of the initial advance of the Loan.

e.       **Use of Proceeds**:  The DIP Loan shall be used, among other things, to pay (a) Debtor's ordinary course ongoing operating expenses; and (2) certain administrative fees and expenses approved by the Court.

f.       **Security:**  Except for the Carve-Out, the DIP Loan shall be secured in accordance with 364(d) of the Bankruptcy Code by valid, binding, continuing, enforceable, fully perfected and unavoidable first-priority senior priming security interests in, and liens upon the Property.

g.    **Carve-Out**:  As discussed in more detail below, the DIP Lenders' liens will be subject to a Carve-out for certain U.S. Trustees' fees and Clerk of the Bankruptcy Court's fees.

h.    **Interest Rate**:  A rate per annum equal to thirteen percent (13%).

i.    **Mandatory Repayments**: The obligations are due and payable on the Maturity Date.

j.    **Conditions to Closing and Funding**: Debtor agrees that DIP Lenders' obligation to open and fund the DIP Loan is conditioned on: (1) execution of final DIP loan documents; (2) filing the Motion in a timely manner; (3) approval of the Budget, as described below; and (4) there are no uncured default or event of defaults under the DIP loan documents.

k.    **Events of Default**: Failure to make payment when due, breach of any representations or warranty made by the Debtor, a material adverse change occurs with respect to the Debtor or the Property, any act that adversely affects the DIP Loan Order, or failure by the Debtor to comply in all material respects with each and all of the terms of any DIP Loan Order.

**B.    The Critical Need for the DIP Loan**

9.    The Debtor is in need of funds to cover: (i) working capital shortfalls; (ii) currently due insurance premiums; (iii) required utility payments; and (iv) staff payroll and associated payroll taxes.  Although the Debtor's affiliates actually operate the Property, revenue from the HOA and the club dues fail to cover all required operating expenses and Debtor is required to cover such shortfall.  Continued operation and maintenance of the Property is necessary to preserve the going concern value of the Property which the Debtor believes accounts for the substantial portion of the current value of the estate.

10.     The Debtor needs these additional funds to pay these post-petition, ordinary-course expenses related to the Property.

**C.     Approval Under Sections 364(c)(2) and (d) of the Bankruptcy Code.**

11.     Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security.  If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, or combination of the foregoing.

12.     Section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur post-petition debt on a senior or "priming" basis if: (1) the debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *See* 11 U.S.C. § 364(d)(1).

13.     As noted above, the need for the Debtor to obtain financing is critical.  Further, the evidence at the Hearing will show that a working capital facility of the type needed in this chapter 11 case could not have been obtained on any other basis.

14.     The Debtor proposes to obtain financing under the DIP Loan and DIP loan documents and the DIP Loan Order by seeking, pursuant to section 364(c)(1) of the Bankruptcy Code, to provide for a DIP Superpriority Claim.

15.     In addition, the Debtor is seeking authority, pursuant to section 364(d) of the Bankruptcy Code, to prime any and all valid liens which may exist on the Property. Accordingly, Debtor seeks authority to grant adequate protection to any entity whose liens or claims are being primed by the DIP Loan (the Debtor does not concede that any entity is entitled to adequate protection).

**D.     The Debtor's Lack of Alternative Financing.**

16.     It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions. *See In re Lyondell Chem. Co.*, No. 09-10023 (Bankr.S.D.N.Y. 2009). Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.N.D.Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b). *See In re Plabell Rubber Prods.*, *Inc.*, 137 B.R. 897, 899-900 (Bankr.N.D.Ohio 1992).

17.     Despite its diligent efforts in seeking unsecured or secured credit, the Debtor was unable to secure any additional debtor-in-possession financing from any source, other than the DIP Loan. Accordingly, the Debtor submits that terms of the Commitment Letter are the only terms available to the Debtor.

**E. Use of the DIP Loan Proceeds**

18.     The DIP Loan Order provides that, upon finalizing and executing the DIP loan documents, the Debtor will immediately be authorized to borrow the amount of available borrowing under the Commitment Letter.

19.     Attached to the original of this Motion and filed with this Court as **Exhibit "C"** is an operating budget (the "Budget") for the period of December 2009 through August 2010. The Budget has been prepared by the Debtor and represents the Debtor's projections of those costs which are reasonable and necessary for the continued operation of the Property during the Budget period. The DIP Loan will be used to provide the liquidity necessary to fund the amounts set forth in the Budget.

20.     The DIP Lender has reviewed the Budget and has no objection to the same.

**F. Good Faith**

21.     The Debtor and DIP Lender have negotiated the terms and conditions of the proposed credit extension in good faith; the terms and conditions of such credit extension are fair and reasonable and are supported by reasonably equivalent value. Any credit extended by the DIP Lender pursuant to the terms of this Motion will have been extended in "good faith" (as that term is used in § 364(e) of the Bankruptcy Code).

22.     Upon court approval of this Motion, the Debtor and DIP Lender will execute the DIP loan documents. All terms not defined herein shall be as set forth in the Commitment Letter.

23. Upon entry of a non-appealable order approving the Motion, the Debtor agrees that the automatic stay of Bankruptcy Code § 362 shall be lifted to allow the DIP Lender and the Debtor to consummate this Loan.

## CERTIFICATE OF NECESSITY OF
## REQUEST FOR EMERGENCY PRELIMINARY HEARING

24. Continued operation of the Property is essential to the filing of an effective and confirmable plan of reorganization and is in the best interest of the Debtor's creditors; however, continued operation requires additional advances from the DIP Lender to pay operating expenses of the Property.

25. In order to continue vital operations, the Debtor must continue to cover the shortfall related to the operation of the Property. Additionally, in order to protect the value of the Property, the Debtor is required to pay its currently due insurance premiums. The DIP Loan is needed to pay these critical past and currently due bills.

26. The Debtor estimates that approximately 15 minutes will be necessary for a hearing on this Motion.

27. The Debtor and counsel are prepared to appear on two hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

**WHEREFORE**, Debtor respectfully requests this Court enter an Order granting the following:

A. Authorize the Debtor to borrow up to Eight Hundred and Three Thousand Nine Hundred and Fourteen Dollars ($803,914.00) from the DIP Lender on a secured basis, pursuant to the terms of this Motion and the Commitment Letter;

B. Authorize the Debtor to obtain such post-petition financing and incur post-petition indebtedness, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall: (i) pursuant to § 364(c)(1) of the Bankruptcy Code, have priority (except as to agreed carve-out for U.S. Trustee fees) over any and all administrative expenses; and (ii) pursuant to § 364(d)(1) of the Bankruptcy Code, be secured by the DIP Lien in the Property and all of the Debtor's real property, contract rights, general intangibles, personal property and proceeds of any kind, created or arising on or after the Petition Date;

C. Authorize the Debtor to execute a mortgage, security agreement, loan agreement, and such other documents, instruments, and agreements as are necessary to evidence the obligation to repay the DIP Loan made by DIP Lender pursuant to this Motion and to grant and perfect liens on the pledged assets and proceeds, and to perform all such other acts as reasonably may be required in connection with the credit to be provided pursuant to this Motion;

D. Grant the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of this Motion.

**RESPECTFULLY SUBMITTED** this 7th day of December 2009.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
Florida Bar No. 984469
rshuker@lseblaw.com
Justin M. Luna, Esquire
Florida Bar No. 0037131
jluna@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
P. O. Box 3353 (32802-3353)
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO.  6:09-bk-17926-KSJ

PARADISE PALMS, LLC, ,                              CHAPTER 11

                         Debtor.                    EMERGENCY RELIEF REQUESTED
_____/                  HEARING REQUESTED BY 12/11/09


CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of **EMERGENCY MOTION OF DEBTOR
SEEKING ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION
FINANCING FROM THE DIP LENDER ON AN INTERIM BASIS PURSUANT TO
SECTION 105 AND 364 OF THE BANKRUPTCY CODE; (B) PROVIDING LIENS,
SECURITY INTERESTS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER;
AND (3) APPROVING THE FORM AND METHOD OF NOTICE THEREOF AND
REQUEST FOR PRELIMINARY EMERGENCY HEARING** has been furnished by
facsimile, electronic transmission and/or U.S. First Class mail, postage prepaid, to: Paradise
Palms, LLC c/o Andrew LaRosa, 8950 Paradise Palms Blvd., Kissimmee, Florida 34747; David
Goduti, EFO Financial Group, LLC, 9180 Galleria Court, Suite 600, Naples, Florida 34109;  the
United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801; Jonathan
C. Vair, a/f Len Paradise, Museum Tower, Suite 2200, 150 West Flagler Street, Miami, Florida
33130; and the list of 20 largest unsecured creditors and the Local Rule 1007-2 Parties-in-
Interest List, as shown on the matrices attached to the original of this motion filed with the
Court, this 7th day of December 2009.

                                        /s/ R. Scott Shuker
                                        R. Scott Shuker, Esquire

**EFO** Financial Group, LLC

### 9180 Galleria Court, Suite 600
### Naples, Florida 34109
Tel: 239-449-1811; Fax: 239-449-1810

December 3, 2009

Mr. Andrew La Rosa
Paradise Palms, LLC
2995 W U.S. Highway
Kissimee, FL 34746

Attorney for Debtor:

R. Scott Shuker
Latham, Shiker, Eden & Beaudine, LLP
390 North Orange Avenue
Suite 600
Orlando, FL 32801

| In re: | Financing Request for a Chapter 11 Debtor-In-Possession Term Loan in the maximum principal amount of $803,914 (Including Fees, Costs and Expenses to be paid) to be provided by Lender to Paradise Palms, LLC. |
|---|---|

Gentlemen:

In reference to the above-captioned matter, the undersigned is pleased to provide this non-assignable commitment (this "Commitment") to Paradise Palms, LLC, for a debtor-in-possession term loan (the "Loan") upon the terms and conditions described below.

| | |
|---|---|
| **LENDER:** | **EFO Financial Group, LLC**, a Florida limited liability company, and/or its participants or assigns ("Lender"). |
| **BORROWER:** | **Paradise Palms, LLC**, a Florida limited liability company, and/or its participants or assigns ("Borrower"). |
| **AMOUNT OF LOAN/ADVANCES:** | The maximum aggregate principal amount of the Loan shall be **$803,914** including the Interest Reserve (defined below), the Commitment Fee |

1

(defined below), the Loan Servicing Fee (defined below), the Closing Costs (defined below) together with any other costs as provided herein and/or in the Loan Documents (collectively, the "Maximum Loan Amount"), which amount shall be loaned as follows:

A.     Upon entry of interim and final orders of the Bankruptcy Court satisfying the requirements of this Commitment and granting the liens and other rights described herein, which final order has not been appealed, modified, stayed, vacated or reversed (the "Final Order"), and upon satisfaction of all conditions and requirements of this Commitment and of the Loan Documents to be approved by the Bankruptcy Court and executed by the Borrower (see below), the Lender will make debtor-in-possession loans (together, the "Loan") in the maximum aggregate principal amount of **$803,914**, the Loan to include the Interest Reserve Account (defined below), the Commitment Fee (defined below), the Loan Servicing Fee (defined below), the Closing Costs (defined below) together with any other costs as provided herein and/or in the Loan Documents. Except as otherwise provided herein, in the Lender's discretion, in no case shall the Lender be required to advance more than the Maximum Loan Amount.

B.     In addition, Lender may make advances on the Loan, in Lender's discretion and without further order of the Bankruptcy Court, to pay Lender's costs and expenses incurred both in connection with closing of each advance of the Loan and in connection with the Bankruptcy Case (in each case including, but not limited to, reasonable fees and costs of the Lender's counsel), which advances shall become part of the principal amount of the Loan.

**TERM:**          The maturity date of the Loan shall be the date which is twelve (12) months after the date of the Closing of the initial advance of the Loan (the "Maturity Date").

**BUDGET/USE OF PROCEEDS:**          Loan proceeds shall be used by Borrower in accordance with the budget and anticipated draw schedule in substantially the same form as that which is attached hereto as **Exhibit "A"** (the "Budget"), which Budget shall be modified and approved by Lender, on or before the date of the hearing for approval of this Commitment.

| | |
|---|---|
| **INTEREST:** | A.    The interest rate shall be thirteen percent (13%) per annum (hereafter the "Contract Rate") with the first twelve (12) months of interest payments prepaid from loan proceeds and shall be due and fully earned on the Closing Date. |

B.    Monthly payments will be computed on a 30-day month and a 360-day year, unless such computation results in the effective interest rate of the Loan exceeding the maximum rate of interest allowable under applicable state and federal law. It is hereby understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the effective interest rate does exceed the maximum rate allowable by applicable state or federal law, the Borrower and Lender intend to and hereby agree to reduce the effective interest rate to the maximum rate allowable by state or federal law.

C.    Upon occurrence of an event of default, interest shall accrue to the Lender at the maximum rate permitted by law in the State of Florida on all amounts then outstanding from the date of default. Without limiting the generality of the foregoing, payments made more than five (5) business days past their due date shall be deemed to be in default and shall be assessed at the maximum rate per annum as permitted under Florida and federal law. Furthermore, nothing herein shall relieve the Borrower of the absolute obligation to pay interest and other amounts due in connection with the Loan.

**LOAN SERVICING FEE:** At the funding of the initial advance of the Loan, from the proceeds of such advance, Borrower shall pay to Lender a loan servicing fee calculated as one and two-tenths percent (1.2%) of the Maximum Loan Amount (the "Loan Servicing Fee"), due and fully earned at closing.

**COLLATERAL/ OTHER RIGHTS:** A.    The Loan shall be secured by a first priority mortgage lien on all of the real property in which the Borrower owns and all other property interests, real, personal or intangible of the Debtor, now existing or hereafter acquired, including, without limitation, contract rights and property interests acquired post-petition (hereafter collectively referred to as the "Collateral"). The Collateral will include, but not be limited to, 584 lots in various stages of development and encompassing 120± acres, a 10,000± square foot clubhouse, a 4,995± square foot resort-style pool with 17,000 square feet of deck space, basketball and tennis courts, and a

3

47 seat movie theater located within the residential community of Paradise Palms Resort within the City of Kissamee in the State of Florida, more particularly described under **Exhibit "B".**

The mortgage liens and security interests in favor of Lender shall be senior to any and all other liens, mortgages and security interests encumbering said Collateral pursuant to 11 U.S.C. §§ 364 (c)(2) and 364 (d). Lender's mortgage liens and security interests in the Collateral shall be senior to all other interests of any party, including, without limitation, tax liens (except ad valorem taxes for 2009 and subsequent years and assessments of the Westside Community Development District), the declaration of condominium and related instruments, and any and all covenants, deed restrictions, equitable servitudes or other rights in such Collateral as may be acceptable to Lender, its counsel and the Title Insurance Company.

B.     In addition, as a condition precedent to Lender's obligation to make the Loan and as a material inducement to the Lender, the Lender shall have a super-priority administrative expense claim, on account of the Loan pursuant to 11 U.S.C. § 364(c)(1), with priority over all other administrative expense claims except those payable to the Office of the United States Trustee, and the Lender shall not be required, without its consent, to accept property other than cash in satisfaction of (a) its liens and security interests which encumber the Collateral as security for payment of the Loan and (b) the super-priority administrative expense claim, notwithstanding 11 U.S.C. § 1129 (a)(7) or (b)(2)(A) .

C.     Lender's mortgage liens and security interests shall not be primed, surcharged, altered or impaired or otherwise adversely affected in any way. No claim or expense shall have priority over Lender's rights in the Collateral. Except as provided in the immediately preceding paragraphs A and B, no administrative expense, and no claim allowed and payable under 11 U.S.C. §§ 330, 331, 503(b) 506(c), 507 or 726, shall have priority with respect to any asset of the Borrower which constitutes either the Collateral pursuant to 11 U.S.C. §364 (d) or, over the claims of the Lender pursuant to 11 U.S.C. §364(c)(1).

D.     The Final Order authorizing the first priority liens and super-priority administrative expense claims in favor of the Lender and incorporating the terms and requirements of this Commitment, shall also contain both a finding by the Bankruptcy Court that the extension of credit and making of loans by Lender hereunder to Borrower is being made in good faith and, therefore, Lender shall be entitled to the full protections of 11 U.S.C. §364(e) and shall be made effective immediately

4

without any stay of the effect of such Order so as to permit immediate funding within the provisions and protections of 11 U.S.C. §364(e).

**COVENANTS:** In addition to all standard covenants required by the Lender in Debtor-in-Possession loans made under like circumstances, including all standard commercially appropriate terms in the Lender's absolute discretion, the Lender will require that:

A. Borrower shall: (a) own the Collateral, (b) disburse funds for the payment of expenses only as set forth in the Budget, (c) comply with all provisions of the Final Order, this Commitment and the Loan Documents, (d) present to the Lender such additional instruments as may be required for endorsements to the Title Insurance Policy as Lender may require insuring that all advances of the Loan subsequent to the initial advance retain the lien priority described therein and that there are either no mechanic's lien claims or unpaid Notices to Owner or any such mechanic's lien claims or unpaid Notices to Owner are not excepted from the applicable Title Insurance Policy referred to above, (e) notify Lender in writing of any material adverse change in the Collateral, the financial condition of the Borrower or the financial viability or performance of the Borrower's property, or of economic conditions which may materially adversely affect the value or performance of the Borrower's property.

B. Borrower shall supply to Lender: (A) on or before the 20th day of each month during the term of the Loan, a receipts and disbursements statement relating to the operation of the Collateral including the use of Loan proceeds; (B) on or before the 20th day of each month during the term of the Loan, a schedule reflecting both all available Loan proceeds, not yet disbursed, and all outstanding costs; (C) within three (3) days after Borrower receives a copy of the same, copies of any and all appraisals of any of the Borrower's property and/or equipment; and (D) all information reasonably necessary for Lender to monitor its Loan to Borrower.

C. So long as any portion of the Loan remains outstanding, the Borrower shall not seek or permit, and shall actively object to the request for entry of, (i) an order dismissing or converting its Chapter 11 Case or appointing a Chapter 11 Trustee or (ii) any order which authorizes under any section of the Bankruptcy Code the granting of any lien or security interest in any Collateral in favor of any party other than Lender or the obtaining of any credit or the incurring of any indebtedness that is entitled to super-priority administrative status equal to or superior to that granted to Lender.

5

**DEFAULT/
REMEDIES:**      A.     The Loan Documents shall contain events of default and remedies customarily required by Lender in its absolute discretion in transactions such as the Loan.

B.     In addition to other rights and remedies available under the Loan Documents or applicable law, upon occurrence of an event of default:

     i) Lender, if it seeks to exercise its rights and remedies under the Loan Documents with respect to the default, shall provide written notice (the "Written Notice") to the Borrower, the Borrower's counsel of record in the Bankruptcy Case, the United States Trustee, and counsel (if any) for the official committee of unsecured creditors, and shall file an affidavit with the Bankruptcy Court specifying the default. The Written Notice may be any written document providing notice of default, including but not limited to the affidavit filed with the Bankruptcy Court.

     ii) Any party entitled to the Written Notice shall have five (5) business days from the receipt of the Written Notice in which to cure the default or file a controverting affidavit with respect to the default.

     iii) If the default is not cured within the prescribed five (5) business day period, Lender may file an emergency motion for relief from the automatic stay, and the Court will set an expedited hearing on 48 hours notice to determine whether Lender shall be granted relief from the automatic stay to foreclose on its liens or take any other action available to Lender under the Loan Documents and applicable law. At the hearing the Borrower may only contest the Lender's declaration of the default and may not assert any other or additional defenses.

C. The entire principal balance of the Loan, plus all accrued and unpaid interest, fees and costs, through the date of payment, shall, in addition to default by Borrower under the Loan Documents as described above, automatically become due and payable upon (i) the confirmation of any plan of reorganization in the Bankruptcy Case unless the plan proposes to treat Lender's claims in the same manner as provided in this Commitment and the Loan Documents, or such other treatment as the Lender, in its sole and absolute discretion, to which it may agree in writing, (ii) conversion of the Borrower's Chapter 11 case to a case under Chapter 7, (iii) appointment of a Chapter 11 trustee or examiner with expanded powers unless the Lender consents to such an appointment, (iv) dismissal of Borrower's Bankruptcy Case, (v) entry of an order granting relief from stay to any party with regard to any interest in real property or cash collateral of the estate of Borrower, (vi) entry of an

6

order approving the transfer of any of the Collateral, or the transfer of any of the Collateral, to a party other than Lender and other than in the ordinary course of business or (vii) the institution of any foreclosure action with respect to any interest in real property of the estate of Borrower.

D. Lender and Borrower have agreed to a Partial Release Fee per lot equal to 100% of the Net Proceeds of Sale ("Net Proceeds of Sale" being defined as the gross sales price, less real estate commissions, customary closing costs and prorations, but in no event shall the Net Proceeds of Sale be less than $29,100 per lot) until the Loan is paid in full.

**CONDITIONS:**    Lender's obligations to close the loan or to make each advance of the Loan shall be expressly subject to the following conditions precedent:

A.      On or before **December 11, 2009** the Borrower shall use its best efforts to have filed with the Bankruptcy Court a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Case") and a motion, in form and substance acceptable to Lender in its discretion, requesting (i) approval of the Loan as described herein and (ii) authority to grant the Lender the lien priorities described herein with respect to the Collateral (the "Motion"). A copy of this Commitment shall be attached to the Motion as filed and served on all parties in interest required to be so served. The Motion shall have been served on all creditors of the Borrower, the General Contractor with respect to the Project, if applicable, all parties with whom the Borrower has an executory contract with respect to the Project or any of the other Collateral and all entities who have filed a Notice to Owner with reference to the Project or any other component of the Collateral.

B.      The Bankruptcy Court shall have entered the Final Order approving this Loan under the terms set forth in this Commitment, finding that the Debtor is the owner of the Collateral and the documentation for the same, which Final Order shall have a copy of this Commitment attached thereto and incorporated in its entirety by reference, and shall be in form and substance acceptable to Lender in its sole discretion, and which Final Order shall not have been appealed, modified, stayed, vacated, or reversed.

C.      With regard to all Collateral which is real property, (i) issuance of a commitment for a lender's title insurance policy (the "Title Commitment"), issued by Lender's counsel from a title company acceptable to Lender (the "Title Company"), in form and substance satisfactory to Lender in its sole and absolute discretion, insuring the

Lender's interest in the Collateral consistent with the terms of this Commitment, without any exception, *inter alia*, for claims of mechanic's liens or unpaid Notices to Owner; (ii) delivery to Lender of a property insurance binder approved by Lender showing that the Improvements are insured, at Borrower's expense, in an amount not less than the greater of (a) their respective fair market value or (b) their respective replacement cost, and showing Lender as additional insured and loss payee. The cost of all of the foregoing shall be borne by Borrower.

D.     On or before **December 21, 2009**, or as soon thereafter as the Court will consider the matter after Borrower has asked for expedited consideration, Borrower shall have used its best efforts to have obtained an order of the Bankruptcy Court, in form and content consistent, in Lender's sole and absolute discretion, with the terms of this Commitment, approving the final form of, and Borrower shall have executed, a definitive loan agreement, notes, deeds of trust or mortgages, security agreements, and other documentation and customary certificates, consistent with the terms set forth herein and otherwise in form satisfactory to Lender and its counsel; unless such conditions are waived in Lender's sole and absolute discretion. The Final Order of the Bankruptcy Court approving such documents shall not have been appealed, stayed, modified or amended, and shall be in form and substance acceptable to Lender, and shall be made effective immediately without any stay of the effect of such Order so as to permit immediate funding within the provisions and protections of 11 U.S.C. §364.

In addition, Borrower shall have provided Lender evidence satisfactory to Lender and Title Company that all agreements and documents have been executed by the Borrower and the party executing the above documents has the authority to bind the Borrower. Additionally, Borrower shall provide such other legal opinions as may be required to ensure the Loan complies will all applicable state and federal legal requirements. All of the foregoing loan agreements, notes, deeds of trust or mortgages, security agreements, other documentation and customary certificates, and this Commitment, shall be referred to herein, collectively, as the "Loan Documents." Each of the Loan Documents shall be in form and substance satisfactory to the Lender and Lender's counsel in their sole discretion.

E.     There shall exist no event of default or set of circumstances which given the expiration of time or the giving of notice would give rise to an event of default under the Loan Documents.

8

Exhibit A

F.     The Borrower, at its sole cost and expense, shall provide an "update" of the existing survey of the Collateral, certified in accordance with ALTA standards to Lender and the Title Company prepared by a surveyor licensed by the State of Florida, where such real property is located, showing such real estate to be free of material encroachments, overlaps and other survey defects, all in accordance with Lender's and Title Company's survey requirements.

G.     All parties claiming liens in the Collateral and all creditors of the Borrower, the General Contractor with respect to the Project, if applicable, all parties with whom the Borrower has an executory contract with respect to the Collateral and all entities who have filed a Notice to Owner with reference to the Collateral shall have received notice of the Motion and the hearing thereon, and (a) all such parties shall have consented to, or shall not have objected to, the Loan and entry of the required orders of the Bankruptcy Court approving the Loan, or (b) any objections of parties in interest shall have been specifically overruled in their entirety in the written final order or orders of the Bankruptcy Court approving the Loan.

H.     This commitment is subject to and conditioned upon the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Loan request and there must be no adverse change in the condition, business or prospects of the Collateral or the Borrower prior to the disbursements of funds or during the term of the Loan.

I.     This Commitment is subject to and conditioned upon the receipt and satisfactory review of the due diligence materials, including specifically the items set forth in C. and F. of this Paragraph.  After conducting its due diligence including a physical inspection of the Collateral, Lender, at its sole discretion, may choose not to enter into the Loan and terminate this Commitment, for any reason whatsoever.

J.     Borrower shall have demonstrated and/or Lender, in its sole discretion, shall have determined that there are no environmental, land use, zoning or other governmental or regulatory issues that will adversely impact the Collateral in its current "as is, where is" condition, the operations of Borrower or its ability to repay the Loan.  Borrower shall have provided the Lender with any and all reports on such issues in its possession.  Said reports shall be in form and substance satisfactory to Lender in its sole discretion.

Exhibit A

K.     The Maximum Loan Amount shall not exceed fifty-percent (50%) of the "as completed" value of the Collateral as determined by Lender in its sole and absolute discretion.

L.     Lender, at its discretion, may waive any one or more of the above-described conditions, but no such waiver shall be effective against Lender unless in writing and signed by an authorized representative of Lender.

**FEES & COSTS:**     A.     At the funding of the initial advance of the Loan, from the proceeds of such advance, Borrower shall pay to Lender a commitment fee calculated as four percent (4%) of the Maximum Loan Amount (the "Commitment Fee"), due and fully earned at closing, as set forth in the Budget. In addition, at the funding of the initial advance of the Loan and with each subsequent advance, Borrower shall pay (a) all of Lender's reasonable costs and expenses related to the Loan or to the Case (including Lender's reasonable travel and lodging expenses) and out-of-pocket expenses and the fees and expenses of Lender's counsel (collectively the "Due Diligence Expenses") all accrued as of such closing (which shall automatically become part of the Loan), (b) all recording costs (including mortgage or intangible taxes) for filing the recordable Loan Documents, and (c) the cost of the Lender's Mortgagee Title Insurance Policy, which Lender's counsel shall provide at the minimum promulgated rate, or such other rate to which the Lender may agree, and the cost of the survey of the real property which serves as, all of such costs under (a)-(c) being collectively referred to as the "Closing Costs".

B.     In addition, the Borrower shall pay to Lender the reasonable fees and expenses (including reasonable travel expenses, if any) of Lender's counsel, arising subsequent to Closing in connection with this transaction and the representation of Lender in the Case, which such reasonable fees and expenses shall be deemed a part of the Loan secured by the Collateral.     The reasonable legal fees of Lender's counsel shall be calculated on a time-spent basis, based upon the standard hourly rates of Lender's counsel generally charged to clients of that firm for similar matters and shall be paid from loan proceeds.

C.     Borrower agrees that the Loan shall be without cost to Lender. Borrower assumes liability for and will pay all costs and expenses required to satisfy the conditions hereof and the making of the Loan as provided hereunder (including the costs of the mortgagee title policy and the survey).     Such costs and expenses shall be paid as provided hereunder, or upon demand if the Loan does not close or if this Commitment is terminated.

Exhibit A

**ACCEPTANCE OF**
**COMMITMENT:** Upon acceptance and execution of this Commitment by Borrower, Borrower shall cause to be paid to Lender from funds other than those of Borrower a loan application fee in the amount of $10,000 ("Application Fee"). The Application Fee shall include and be applied toward payment of Lender's out-of-pocket due diligence and inspection costs, including, but not limited to, any expenses incurred by Lender, and Lender's travel, lodging and other out-of-pocket expenses (collectively, "Due Diligence Expenses"). The Application Fee shall be earned upon receipt.

If this Commitment is not terminated by Lender under subparagraph A. of the CONDITIONS, and upon approval of this Loan by the Bankruptcy Court, subject to the terms of this Commitment a stand-by commitment loan fee in the amount of two percent (2.0%) of the Maximum Loan Amount ("Stand-by Fee") shall be earned.

The Stand-by Fee shall be deemed earned by the Lender, if any of the following events occur: (i) this Loan has been approved by the Bankruptcy Court, as noted above, (ii) the Borrower elects to not enter into the Loan under this Commitment for any reason, (iii) the Bankruptcy Court authorizes the Borrower to obtain financing from an existing creditor or other third party lender in lieu of Lender and the financing is provided by such existing creditor or other third party lender, or (iv) the Borrower fails to satisfy any of the material Conditions contained in this Commitment (each of the foregoing being defined as a "Triggering Event"). Upon the occurrence of a Triggering Event, the Lender shall have an allowed administrative expense claim in the Borrower's bankruptcy Case for the amount of the Stand-by-Fee, and the Lender and the Borrower shall be relieved of any further obligation under this Commitment; provided, however, that in the event the Borrower obtains financing from another lender, creditor or third party, the Stand-by-Fee shall be paid in full, in cash, at the closing of such loan(s). If the Loan is not made by Lender as a result of Lender's election to not enter into the Loan, then the Stand-by Fee shall not be recorded as an administrative claim and the Lender shall receive no other compensation for its services (other than the Application Fee), and the Lender shall then have no further obligation to the Borrower under this Commitment.

**LEGAL FEE**
**DEPOSIT:** Upon acceptance and execution of this Commitment by Borrower, Borrower shall cause to be paid to Lender's counsel from funds other than those of Borrower a $10,000 Legal Fee Deposit to be paid to Lender's attorney upon this letter becoming a commitment once signed by all parties. The Legal Fee Deposit, which shall not be construed as a

cap, will be available to Lender's attorney to be used to defray costs and attorneys' fees associated with closing the Loan. Any remaining amount, if any, shall be applied to and creditied against the Commitment Fee at closing. To the extent that the Legal Fee Deposit is insufficient, any remaining amount due shall be disbursed to Lender or its counsel as a closing cost, at closing.

This letter will become a commitment once signed by all parties and returned with the $10,000 Application Fee and $10,000 Legal Fee Deposit. This offer by Lender will expire, **December 4, 2009 @ 5:00 PM, time is of the essence.** Lender shall have no obligation with respect to the Loan unless and until this commitment letter is fully executed and received by Lender along with the Application Fee and if the Commitment is not terminated under subparagraph A. of the Conditions. Said $10,000 Application Fee and $10,000 Legal Fee Deposit shall be deposited in the Lender's account with following wire instructions:

**Wire instructions:**

**WIRE INSTRUCTIONS:**
**EFO FINANCIAL GROUP, LLC**
**AMOUNT: $10,000 (Application Fee)**
WIRE TO: BANK OF AMERICA
ABA NO: 026009593
ACCOUNT OF: EFO FINANCIAL GROUP, LLC
Acct NO: 488014073373

**WIRE INSTRUCTIONS:**
**EFO FINANCIAL GROUP, LLC**
**AMOUNT: $10,000 (Legal Fee Deposit)**
WIRE TO: BANK OF AMERICA
ABA NO: 026009593
ACCOUNT OF: EFO FINANCIAL GROUP, LLC
Acct NO: 488014073373

CLOSING: The closing on the Loan shall take place as soon as practical after satisfaction of the conditions contained herein, including without limitation, approval of the Bankruptcy Court. Each successive advance on the Loan shall take place upon satisfaction of the conditions contained herein.

ASSIGNMENT: Lender may assign any or all of its obligations and rights hereunder to one or more assignees or participants, and may collaterally assign the Loan Documents to Lender's lender under any existing or future loan

Exhibit A

arrangement. Lender intends to bring participants into this transaction either as assignees or indirectly as lenders to Lender. Borrower consents to Lender's sale or assignment of all or a portion of the Loan, and Borrower agrees to execute any and all agreements and other documents reasonably requested by Lender and Lender's lenders to formalize such assignments of or participations in the Loan.

**USURY:** This Commitment is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest at a rate which could subject Lender or its assignees to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this Commitment or the note the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance or, if the Loan has not closed shall be void, and if Lender deems it a hardship to close the Loan under usury statutes, all fees paid to Lender shall be refunded and this Commitment shall be null and void.

It is also hereby understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the effective interest rate does exceed the maximum rate allowable by applicable Florida law, the Borrower and Lender intend to and hereby agree to reduce the effective interest rate to the maximum rate allowable by Florida law.

It is further understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at the Default Rate's effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the Default Rate's effective interest rate exceeds the maximum rate allowable by applicable Florida law, the Borrower and Lender intend to and hereby agree to reduce the Default Rate's effective interest rate to the maximum rate allowable by Florida law.

**CONFIDENTIALITY:** This Commitment is confidential. Until such time as the Commitment has been executed by each of the Borrower and the Lender, the Borrower shall not disclose the terms of this Commitment to any third party other

than its officers, directors, professionals and advisors, unless otherwise required by Bankruptcy Court order following a hearing on notice to the Lender. This provision shall survive the termination of this Commitment.

**SURVIVAL OF COMMITMENT:**

A copy of this Commitment shall be attached to, and incorporated into, each and every order entered by the Bankruptcy Court with regard to the Loan. To the extent not inconsistent with the other Loan Documents, this Commitment and all of the terms and conditions contained herein shall survive the closing of the Loan and shall remain binding on the Borrower and Lender as part of the Loan Documents, provided, however, that if there should exist any disagreement between the terms of this Commitment and the terms of any of the other Loan Documents, the terms of the Loan Documents shall control.

**EXECUTION AND RELIANCE ON COUNSEL:**

This Commitment may be executed in counterparts which, taken together, shall constitute one original. This Commitment is for the benefit of the Borrower only and may not be assigned except upon the prior written consent of Lender, which consent may be withheld for any reason or for no reason. No party other than the Borrower or a consented to assignee may rely upon the terms and conditions of this Commitment. This Commitment is executed by an individual strictly in his capacity as a representative of the Lender. By acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee or agent of the Lender shall be personally liable for the payment of any claim or performance of any obligations hereunder. This Commitment will be governed by and construed in accordance with the laws of the State of Florida and of the United States, without regard to the principles of conflicts of laws thereof. **The Borrower had the benefit of advice of counsel in connection with the execution of this Commitment and the Loan contemplated hereby. This document has been negotiated at arm's length and in good faith between the Lender and the Borrower.**

**NON WAIVER:**

No failure or delay on the part of Lender to exercise any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under the Loan Documents or under any document delivered thereunder or in connection therewith or allowed to Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

Exhibit A

**OTHER:** Borrower has represented to the Lender that it intends to use a portion of the proceeds of the Loan for the operation of the business, maintenance and upgrades to the property prior to the borrower submitting a plan of reorganization ("Plan") for its emergence from bankruptcy. Lender has relied upon this representation in extending this Commitment. The Final Order authorizing the Loan shall expressly provide that the Bankruptcy Court shall retain the fullest jurisdiction over both this Loan and the Borrower until such time as the Loan is irrevocably repaid to the Lender, in full, in cash. The Plan shall not modify, alter or impair the liens and claims of the Lender. The Final Order shall also contain such waivers as Lender shall require entitling the Lender to immediately foreclose and otherwise enforce rights against the Borrower and the Collateral should the Borrower, either voluntarily or involuntarily, be subject of a subsequent case or proceeding under title 11 of the United States Code, of otherwise default under the Loan or loan documents.

As referenced in this Commitment, funding of the Loan is dependent upon, among other things, satisfactory negotiation of loan documentation between the Borrower and the Lender. The foregoing letter simply sets forth general terms and conditions upon which the Lender would be willing to make the Loan described herein. **This Commitment is not, in and of itself, a document that guarantees funding by the Lender to the Borrower in the amounts set forth herein. Only final loan documentation and satisfaction of the conditions set forth above will obligate the Lender to fund the Loan.** Any material deterioration of the financial condition of the Borrower or the condition of the Collateral between the execution of this Commitment and the closing of the Loan will relieve the Lender of any obligation on the part of the Lender to fund the Loan.

If you find this Commitment to your satisfaction, please execute a copy of this document in the space provided herein below and return the same to the undersigned. Please have the shareholders of the Borrower execute this Commitment to the Lender, upon the terms and conditions contained in this Commitment.

We appreciate this opportunity to respond to your financing requirements. If you have questions regarding this letter, please call Mr. David Goduti at (239) 449-1812.

Very truly yours,

**EFO Financial Group, LLC,**
a Florida limited liability company

By:    EFO Financial Group, LLC,
a Florida limited liability company,
its Manager

By:    _David Goduti_
David Goduti, Manager

Date:    12/3/2009

**AGREED AND ACCEPTED**

Paradise Palms, LLC,
a Florida limited liability company

By:

Name:    Andrew LaRosa

Title:    Managing Member

Date:    12/5/09

16

Exhibit A

# EXHIBIT A

## BUDGET

| DIP Loan Budget | |
|---|---:|
| Operating Expenses | $360,065 |
| Bank of America Interest | 13,152 |
| Payroll & Payroll Taxes | 177,326 |
| Contingency | 75,000 |
| Application & Legal Fee Deposit Reimbursement | 20,000 |
| Interest Reserve | 104,509 |
| Loan Origination Fee | 32,157 |
| Closing Costs (Estimated) | 12,059 |
| Loan Servicing Fee | 9,647 |
| Maximum Loan Amount | $803,914 |

Exhibit A

# EXHIBIT B

## LEGAL DESCRIPTION

<u>Collateral</u>: The collateral for the loan shall include the following:

(a)    The real property more particularly described on Exhibit "B-1" (the "Property"), together with all of the owner's right, title, interest, and privileges in all (i) streets, ways, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the Property or the improvements thereon; (ii) strips or gores of real property between the Property and abutting or adjacent properties; and (iii) all water and water rights pertaining to the Property;

(b)    Any and all improvements of any kind or nature situated, placed, or constructed on the Property;

(c)    All fixtures, materials, supplies, equipment, systems, and apparatus, now or hereafter attached to, installed in, or used in connection with (temporarily or permanently) any of the Property or its improvements, including motors, engines, boilers, furnaces, pipes, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilating, refrigeration, plumbing, laundry, lighting, generating, cleaning, waste disposal, transportation (of people or things, including but not limited to, stairways, elevators, escalators, and conveyors), incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and lighting, traffic control, waste disposal, raw and potable water, gas, electrical, storm and sanitary sewer, telephone and cable television facilities, and all other utilities whether or not situated in easements;

(d)    Any and all leases, master leases, subleases, licenses, concessions, and other agreements (whether written or oral, or now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use or occupy, all or any part of the Property, including all security and other deposits;

(e)    All furniture, furnishings, machinery, goods, general intangibles, money, insurance proceeds, accounts, trademarks, trade names, copyrights, chattel paper, instruments, investment property, letter of credit rights, inventory, deposit accounts or other funds or evidences of cash, credit or indebtedness deposited by or on behalf of owner with any governmental agencies, boards, corporations, providers of utility services, public or private, including reimbursable tap fees, utility deposits, commitment fees and development costs, any awards, remunerations, reimbursements, settlements, or compensation heretofore made or hereafter to be made by any governmental authority pertaining to any of the collateral, and all

18

Exhibit A

other personal property of any kind or character which is now or hereafter situated in, on, or about the Property or used in or necessary to the complete and proper planning, development, construction, financing, use, occupancy, or operation thereof;

(f)     Any and all contracts, subcontracts, and agreements, written or oral, in any way relating to the construction of the improvements on the Property or the supplying of material (specially fabricated or otherwise), labor, supplies, or other services therefor, contracts, licenses, permits, and rights relating to living unit equivalents or other entitlements for water, wastewater, and other utility services whether executed, granted, or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to, or connected with, the development, ownership, maintenance or operation of the Property, whether such contracts, licenses, and permits are now or at any time thereafter existing; and

(g)     Any and all other rights of the owner (i) to develop and/or operate the Property as a commercial and/or residential project, as the case may be; (ii) in any financing arrangements relating to the financing of or the purchase of all or any portion of the Property by future purchasers; and (iii) in all other contracts which in any way relate to the use, enjoyment, occupancy, operation, maintenance, repair, management or ownership of the Property.

Exhibit A

# EXHIBIT B-1

## LEGAL DESCRIPTION

(TO BE INSERTED BY DEBTOR'S COUNSEL)

In re:                                              CASE NO.  6:09-bk-17926-KSJ

PARADISE PALMS, LLC,                                CHAPTER 11

                    Debtor.

_____/

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN
POST-PETITION SECURED FINANCING, (II) GRANTING CERTAIN LIENS,
(III) GRANTING ADEQUATE PROTECTION, (IV) FUNDING SEGREGATED
ACCOUNT WITH CASH COLLATERAL, (V) MODIFYING THE AUTOMATIC
STAY AND (VI) SCHEDULING A FINAL HEARING**

THIS MATTER came before this Court upon a motion (the "DIP Motion")[1] (Doc. No. __) by the above-captioned debtor (the "Debtor"), seeking, among other things, entry of the interim order (this "Interim Order") authorizing, inter alia, the Debtor to obtain post-petition financing from EFO Financial Group, LLC (the "DIP Lender") on an interim basis, pursuant to the terms of the loan documents, as defined in the Commitment Letter and only to the extent necessary to avoid immediate and irreparable harm.

The Court having considered the DIP Motion, the proffered evidence presented by the Debtor in support of the Motion, and the evidence submitted at the interim hearing on the DIP Motion held on _____ (the "Interim Hearing") and having found due and proper notice of the DIP motion, it is hereby

**ORDERED:**

A.      The DIP Motion is granted on an interim basis on the terms set forth in this Interim Order through _____ (the "Interim Period") and the loan documents are hereby approved for performance by the Debtor and the DIP Lender during the Interim Period.

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed in the Commitment Letter. In the event of any inconsistency between the terms and conditions of the loan documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

**B.    Debtor's Acknowledgements and Agreements.**  Without prejudice to the rights of parties in interest as set forth below, the Debtor admits, stipulates, acknowledges and agrees that:

(a)    **Authorization to Borrow.**  In order to enable the Debtor to continue to operate its business during the Interim Period, subject to the terms and conditions of this Order, the Commitment Letter, the other loan documents and the Budget (which may not be materially amended or modified during the Interim Period), the Debtor is authorized under the loan documents to borrow up to the Loan Amount.

(b)    **Application of DIP Proceeds.**  The proceeds of the loan documents (net of any amounts used to pay fees, costs and expenses under the Commitment Letter) shall be used, in each case in a manner consistent with the terms and conditions of the loan documents, and in accordance with the Budget and this Interim Order, subject to the Permitted Budget Variance.

(c)    **Grant of DIP Liens.**  Effective immediately upon the entry of the Interim Order, the DIP Lender is hereby granted, pursuant to sections 361, 362, and 363(c)(2)-(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, first priority, priming and perfected liens in the Property (as defined in the Commitment Letter).  DIP Lender's liens and security interests in the Property are collectively referred to as the "DIP Liens".

(d)    **DIP Lien Priority.**  Except as set forth in this Interim Order, the DIP Liens granted pursuant to the loan documents and this Interim Order shall be senior in priority and shall not be made subject to, or pari passu with any lien or security interest.

(e)    **Senior Claim Status.**  During the Interim Period pending the entry of a Final Order, all DIP Obligations shall be an allowed senior claim, pursuant to Section 364(c)(1) of the Bankruptcy Code (the "DIP Lender's Superpriority Claim" with priority over all existing

liens, any and all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever.

C. **Authorization to Use Proceeds of Loan Documents.** Pursuant to the terms and conditions of this Interim Order, the loan agreements and the Commitment Letter, and in accordance with the budget attached hereto as **Exhibit A** (which may be modified prior to entry of a Final Order, but which may be otherwise modified consistent with the terms of the Commitment Letter and this Interim Order and acceptable to the DIP Lender, the "Budget"), the Debtor is authorized to use the advances under the Commitment Letter during the period commencing immediately after the entry of this Interim Order and terminating upon the Maturity Date. The DIP Lender agrees to fund certain of the Debtor's necessary operating expenses in the ordinary course of the Debtor's business consistent with the Budget, provided that the total amount expended each month per line item does not exceed 105% of the amount provided for in the Budget for such line item expense. "Permitted Budget Variance"). The Debtor may use the DIP Loan for payment of expenses other than those set forth in the Budget or in amounts greater than the Permitted Budget Variance only with prior written consent of the DIP Lender.

D. **Maturity Date.** Subject to the provisions of this Order, all DIP Obligations of the Debtor to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the Commitment Letter shall cease on the Maturity Date, meaning the date that is twelve months from the date of the closing on the Commitment Letter.

E. **Superpriority Claim.** The DIP Lender is hereby granted, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (the "Prepetition Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provision of the Bankruptcy Code, other than the DIP Lender's Superpriority Claim.

Exhibit B

**F.** **Post-Petition Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein.

**G.** **Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.** Nothing in this Interim Order or the Commitment Letter shall prejudice whatever rights the Official Committee of Unsecured Creditors ("Statutory Committee") or any other party in interest with requisite standing (other than the Debtor) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of any of the Debtor's secured creditors in and to the Pre-Petition Property, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Secured Obligations, or (iii) the validity, allowability, priority, status or amount of the Pre-Petition Unsecured Obligations, (b) to bring suit against the senior lender (or any of the Protected Parties) in connection with or related to the Pre-Petition Secured Obligations; provided, however, that, unless the Statutory Committee or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection, claim or challenge, including, without limitation, any claim against the secured lenders or any of the Protected Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Secured Obligations or against any of the Protected Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Unsecured Obligations (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Note A Lenders or any of the Protected Parties), within (a) 60

days following the appointment of a Statutory Committee (if such Committee has been appointed), or (b) if no Statutory Committee is appointed, (i) 75 days following the entry of the Final Order approving the Commitment Letter, or (ii) 10 business days prior to the date of the auction of any Collateral (collectively, (a) and (b) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that a challenge, claim or objection is not raised during the Challenge Period or if a timely challenge, claim or objection has been filed, the date after entry of the Final Order resolving such challenge, claim or objection, shall be referred to as the "Challenge Period Termination Date"). Upon the Challenge Period Termination Date, any and all of such challenges, claims and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in a Successor Case, and any other party in interest) shall be deemed to be forever waived, released and barred, and the Pre-Petition Secured Obligations and Pre-Petition Unsecured Obligations shall be deemed to be allowed in full and the Pre-Petition Secured Obligations shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with this Chapter 11 Case and the Debtor's Stipulations shall be binding on all creditors, interest holders and parties in interest.

**H.** **Payment of Post-Petition Interest and Expenses.**

(i)     The Debtor is authorized to pay, and the DIP Lender is entitled to receive (a) any and all interest, fees and costs under the loan documents and the costs and expenses of the DIP Lender in connection with this Chapter 11 case, including without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out-of-pocket expenses will be paid by the Debtor.

**I.** **Events of Default and Rights and Remedies.** The occurrence of any "Event of Default" under the Commitment Letter shall constitute an immediate Event of Default under this Interim Order. The rights and remedies of the DIP Lender specified in the loan documents are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the loan documents or otherwise.

**J.** **Carve-Out.** Upon the occurrence and during the continuation of an Event of Default, the claims and liens granted hereunder to the DIP Lender and those ranking junior in priority to such liens and claims shall be subject to the Carve-Out. As used in this Order, "Carve-Out" means the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and not more than $30,000 in the aggregate for any Statutory Committee, including the professionals retained by any such Committee(s).

**K.** **Other Rights and Obligations.**

(a) **Business Judgment and Good Faith Pursuant to Section 364(e).** Pursuant to section 364(e) of the Bankruptcy Code, the DIP Lender has acted in good faith in agreeing to extend the post-petition financing to the Debtor. Moreover, the terms of the Loan Documents are fair under the circumstances and all pre-petition secured creditor interests are adequately protected.

(b) **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon execution hereof. To the extent there is an inconsistency between this Order and the Commitment Letter and all related documents

(d) **Amendment.** The Debtor and the DIP Lender may amend or waive any provision of the loan documents, provided that such amendment or waiver, in the judgment of

the Debtor and the DIP Lender, is either non-prejudicial to the rights of third parties or is not

material.

       **DONE AND ORDERED** on

_____
**KAREN S. JENNEMANN**
**UNITED STATES BANKRUPTCY JUDGE**

Exhibit B

Copies to:

Paradise Palms, LLC c/o Andrew LaRosa, 8950 Paradise Palms Blvd., Kissimmee, Florida 34747;

R. Scott Shuker, Esq. and Justin M. Luna, Esq., Latham, Shuker, Eden & Beaudine, LLP (attorneys for Debtor), P.O. BOX 3353, Orlando, FL 32802-3353;

David Goduti, EFO Financial Group, LLC, 9180 Galleria Court, Suite 600, Naples, Florida 34109;

Jonathan C. Vair, a/f Len Paradise, Museum Tower, Suite 2200, 150 West Flagler Street, Miami, Florida 33130;

Local Rule 1007-2 Parties-in-Interest List; and

U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801.

Exhibit B

Exhibit A to Proposed DIP Order

|  | 9-Dec |
|---|---|
| 1. BEGINNING CASH BALANCE | -52,188 |
| 2. CASH INFLOW | |
|    Closed Units | 72 |
|    Managed Units | 30 |
| HOA Dues | 14,328 |
| RESORT Fees | 17,136 |
| Pool Service | 1,500 |
| Rental Commission | 2,500 |
| Closings | 6,654 |
| 3. TOTAL CASH INFLOW | 42,118 |
| 4. CASH OUTFLOW | |
| Auto lease | 309 |
| Auto, Tractor & Maint Equip Expenses | 1,315 |
| CDD Tax | - |
| Electirc - Light Poles | 2,593 |
| Electric - Club House | 4,913 |
| Electric & Guard House | 662 |
| Employee Medical Expense | 5,081 |
| Equip Rental CCS (Phone & TV) | 6,630 |
| General Supplies | 833 |
| Insurance - Worker's Comp | - |
| Liability & Property Insurance | 3,000 |
| Management Payroll & Taxes | 25,963 |
| Office Equipment Leases | 591 |
| Office Equipment Maintenance | 121 |
| Office Supplies | 312 |
| Pool Maintenance & Supplies | 791 |
| Postage & Delivery | 59 |
| Real Estate Property Taxes | - |
| Rental - Cylinder (Propane) | 19 |
| Security Alarm Service | 25 |
| Service Fee CCS (Phone & TV) | 6,026 |
| Software Maintenenace | - |
| Staff Payroll & Taxes & Services | 24,919 |
| Tangible Taxes | - |
| Telehone - Mobile | 535 |
| Termite Bond | - |
| Valet Trash Pickup | 743 |
| Waste Services | 470 |
| Water - Club House | 34 |
| Water - Irrigation | 3,458 |
| 5. SUBTOTAL | 89,402 |
| 6. OTHER CASH OUTFLOW | |
| Bank of America (Mininum Payment Due) | 1,048 |
| | |
| 7. TOTAL CASH OUTFLOW | 90,450 |
| 8. TOTAL INFLOW/(OUTFLOW) | -48,332 |
| 9. ENDING CASH BALANCE | -100,520 |

Exhibit B

Cash Flow Statement for Period 11/1/09 - 10/31/10

| | Basis | 9-Nov | 9-Dec | 10-Jan | 10-Feb | 10-Mar | 10-Apr | 10-May | 10-Jun | 10-Jul | 10-Aug | 10-Sep | 10-Oct | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. BEGINNING CASH BALANCE | - | | -52,188 | -100,520 | -149,751 | -211,061 | -263,543 | -315,291 | -366,946 | -418,614 | -470,293 | -521,973 | -573,652 | |
| 2. CASH INFLOW | | | | | | | | | | | | | | |
| Closed Units | | 70 | 72 | 72 | 72 | 72 | 72 | 72 | 72 | 72 | 72 | 72 | 72 | |
| Managed Units | | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | |
| HOA Dues | 199 | 13,930 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 14,328 | 171,538 |
| RESORT Fees | 238 | 16,660 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 17,136 | 205,156 |
| Pool Service | 50 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Rental Commission | 83 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 29,995 |
| Closings | | 6,654 | 6,654 | 6,654 | 6,654 | - | - | - | - | - | - | - | - | 26,616 |
| 3. TOTAL CASH INFLOW | | 41,244 | 42,118 | 42,118 | 42,118 | 35,464 | 35,464 | 35,464 | 35,464 | 35,464 | 35,464 | 35,464 | 35,464 | 451,305 |
| 4. CASH OUTFLOW | | | | | | | | | | | | | | |
| Auto lease | | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 309 | 3,708 |
| Auto, Tractor & Maint Equip Expenses | | 1,315 | 1,315 | 1,434 | 1,433 | 1,433 | 1,433 | 1,433 | 1,433 | 1,433 | 1,433 | 1,433 | 1,532 | 17,060 |
| CDD Tax | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Electirc - Light Poles | | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 2,593 | 31,116 |
| Electric - Club House | | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 4,913 | 58,956 |
| Electric & Guard House | | 662 | 662 | 622 | 662 | 662 | 662 | 662 | 662 | 662 | 662 | 662 | 662 | 7,904 |
| Employee Medical Expense | | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 5,081 | 60,972 |
| Equip Rental CCS (Phone & TV) | | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 6,630 | 79,560 |
| General Supplies | | 833 | 833 | 979 | 767 | 767 | 767 | 767 | 767 | 767 | 767 | 767 | 868 | 9,649 |
| Insurance - Worker's Comp | | - | - | 655 | 655 | 655 | 655 | 655 | 655 | 655 | 655 | 655 | 655 | 6,550 |
| Liability & Property Insurance | | 6,000 | 3,000 | 3,000 | - | | | | | | | | | 12,000 |
| Management Payroll & Taxes | | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 25,963 | 311,556 |
| Office Equipment Leases | | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 591 | 7,092 |
| Office Equipment Maintenance | | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 1,452 |
| Office Supplies | | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 3,744 |
| Pool Maintenance & Supplies | | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 791 | 9,492 |
| Postage & Delivery | | 65 | 59 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 774 |
| Real Estate Property Taxes | | - | - | - | - | - | - | - | - | - | - | - | - | |
| Rental - Cylinder (Propane) | | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 228 |
| Security Alarm Service | | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 300 |
| Service Fee CCS (Phone & TV) | | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 6,026 | 72,312 |
| Software Maintenenace | | - | - | - | 15,241 | - | - | - | - | - | - | - | - | 15,241 |
| Staff Payroll & Taxes & Services | | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 24,919 | 299,028 |
| Tangible Taxes | | | | | | | | | | | | | | |
| Telehone - Mobile | | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 6,420 |
| Termite Bond | | - | - | - | - | 745 | - | - | - | - | - | - | - | 745 |
| Valet Trash Pickup | | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 8,916 |
| Waste Services | | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 470 | 5,640 |
| Water - Club House | | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 408 |
| Water - Irrigation | | 3,458 | 3,458 | 3,458 | 3,458 | 2,459 | 2,459 | 2,354 | 2,354 | 2,354 | 2,354 | 2,354 | 2,354 | 32,874 |
| 5. SUBTOTAL | | 92,408 | 89,402 | 90,288 | 102,356 | 86,861 | 86,116 | 86,011 | 86,011 | 86,011 | 86,011 | 86,011 | 86,211 | 1,063,697 |
| 6. OTHER CASH OUTFLOW | | | | | | | | | | | | | | |
| Bank of America (Mininum Payment Due) | | 1,024 | 1,048 | 1,060 | 1,072 | 1,084 | 1,096 | 1,108 | 1,120 | 1,132 | 1,132 | 1,132 | 1,144 | 13,152 |
| 7. TOTAL CASH OUTFLOW | | 93,432 | 90,450 | 91,348 | 103,428 | 87,945 | 87,212 | 87,119 | 87,131 | 87,143 | 87,143 | 87,143 | 87,355 | 1,076,849 |
| 8. TOTAL INFLOW/(OUTFLOW) | | -52,188 | -48,332 | -49,230 | -61,310 | -52,481 | -51,748 | -51,655 | -51,667 | -51,679 | -51,679 | -51,679 | -51,891 | -625,543 |
| 9. ENDING CASH BALANCE | | -52,188 | -100,520 | -149,751 | -211,061 | -263,543 | -315,291 | -366,946 | -418,614 | -470,293 | -521,973 | -573,652 | -625,543 | |

Exhibit C

```
Label Matrix for local noticing      Admiral Security                 American Comm Networks Inc
113A-6                               4401 East West Hwy               4400 PGA Blvd
Case 6:09-bk-17926-KSJ               Suite 500                       Suite 902
Middle District of Florida           Bethesda, Md 20814-4500         Palm Beach Gardens, FL 33410-6563
Orlando
Mon Dec  7 14:26:41 EST 2009

Baker Hostetler                      Bank of America                 City Insurance Agency, Inc
P.O. Box 70189                       P.O. Box 15710                  2929 N University Dr
Cleveland, OH 44190-0189             Wilmington, DE 19886-5710       Suite 107
                                                                     Coral Springs, FL 33065-5047


Craftbuilt Homes                     Dept of Comm Dev                Engage Technologies
6165 Lake Lizzie Drive               1 Courthouse Square             8419 Sunstate Street
Kissimmee, FL 34771-8523             Suite 1400                      Tampa, FL 33634-1306
                                     Kissimmee,Fl 34741-5440


IKON Financial Services              IQware, Inc.                    Jill E Kelso
P.O. Box 740540                      600 Hillsboro Blvd W #201       United States Trustee
Atlanta , GA 30374-0540              Deerfield Beach , FL 33441-1610 135 West Central Boulevard Suite 620
                                                                     Orlando, FL 32801-2440


Len Paradise, LLC                    Patsy Heffner                   Progress Energy
c/o Jonathan C. Vair, Esq.           Tax Collector                   P.O. Box 33199
Museum Tower, Suite 2200             P.O. Box 422105                 St. Petersburg, FL 33733-8199
150 West Flagler Street              Kissimmee, FL 34742-2105
Miami, FL 33130-1536


R Scott Shuker                       Tohopekaliga Water Authority    US Home Corporation
Latham Shuker Eden & Beaudine LLP    101 N Church Street             600 North Westshore Blvd.
Post Office Box 3353                 Kissimmee, FL 34741-5054        Suite 900
Orlando, FL 32802-3353                                               Tampa, FL 33609-1114


United States Trustee - ORL          Jonathan C Vair                 Westside Community
135 W. Central Blvd., Suite 620      150 West Flagler Street         Development District
Orlando, FL 32801-2440               Suite 2200                      201 E. Pine Street
                                     Miami, FL 33130-1536            Suite 201
                                                                     Orlando, FL 32801-2729


End of Label Matrix
Mailable recipients    20
Bypassed recipients     0
Total                  20
```

| | | |
|---|---|---|
| Admiral Security<br>4401 East West Hwy Suite 500<br>Bethesda, MD 20814 | American Comm Networks Inc<br>4400 PGA Blvd Suite 902<br>Palm Beach Gardens, FL 33410 | American Comm Networks Inc<br>4400 PGA Blvd Suite 902<br>Palm Beach Gardens, FL 33410 |
| Baker Hostetler<br>P.O. Box 70189<br>Cleveland, OH 44190 | Bank of America<br>P.O. Box 15710<br>Wilmington, DE 19886-5710 | City Insurance Agency, Inc<br>2929 N University Dr Suite 107<br>Coral Springs, FL 33065 |
| Craftbuilt Homes<br>6165 Lake Lizzie Drive<br>Kissimmee, FL 34771 | Dept of Comm Dev<br>1 Courthouse Square Suite 1400<br>Kissimmee, FL 34741 | Engage Technologies<br>8419 Sunstate Street<br>Tampa, FL 33634 |
| IKON Financial Services<br>P.O Box 740540<br>Atlanta, GA | IQware, Inc.<br>600 Hillsboro Blvd W #201<br>Deerfield Beach, FL 33441-1610 | IQware, Inc.<br>600 Hillsboro Blvd W #201<br>Deerfield Beach, FL 33441-1610 |
| Patsy Heffner, Tax Collector<br>P.O. Box 422105<br>Kissimmee, FL 34742-2105 | Patsy Heffner, Tax Collector<br>P.O. Box 422105<br>Kissimmee, FL 34742-2105 | Progress Energy<br>P.O. Box 33199<br>St. Petersburg, FL 33733-8199 |
| Progress Energy #42934-88136<br>P.O. Box 33199<br>St.Petersburg, FL 33733-8199 | Progress Energy #92645-18504<br>P.O. Box 33199<br>St.Petersburg, FL 33733-8199 | Tohopekaliga Water Authority<br>101 N Church Street<br>Kissimmee, FL 34741 |
| US Home Corporation<br>600 North Westshore Blvd. Ste 900<br>Tampa, FL 33609 | Westside Comm Dev District<br>201 E. Pine St., Suite 201<br>Orlando, FL 32801 | |