In re:                                                  Case No.: 6:09-BK-17926-KSJ

**PARADISE PALMS, LLC,**[1/]                             Chapter 11

        Debtor.

_____/

**LEN PARADISE, LLC'S MOTION TO DISMISS**
**CHAPTER 11 BANKRUPTCY CASE AS A BAD FAITH FILING OR,**
**ALTERNATIVELY, MOTION FOR RELIEF FROM THE AUTOMATIC STAY**[2/]

      LEN PARADISE, LLC (**"LEN"**), a secured creditor of Paradise Palms, LLC (**"Debtor"**),

pursuant to Sections 105(a), 1112(b), and 362(d)(1) of Title 11 of the United States Code

(**"Bankruptcy Code"**), and Rule 9014 of the Federal Rules of Bankruptcy Procedure (**"Bankruptcy**

**Rules"**), respectfully moves the Court for entry of an Order dismissing this Chapter 11 case and

determining that the Debtor filed these proceedings in bad faith.  Alternatively, LEN respectfully

requests that the Court grant LEN relief from the automatic stay in order to expand and continue with

pending state court litigation proceedings against the Debtor.  In support of this Motion, LEN states

as follows:

## I.    INTRODUCTION

      1.     LEN understands the impact of the relief this Motion requests and does not seek such

relief lightly.  However, the facts of this case are more than sufficient to support severe action.

Without question, the record shows that the Debtor has caused undue delay among the interested

---

[1/]The last four digits of the Debtor's taxpayer identification number are 6709. *See* 11 U.S.C.
§ 342(c)(1).

[2/]LEN estimates that a non-evidentiary hearing on this Motion will take approximately one
hour, and an evidentiary hearing will require approximately 3-4 hours.

parties and wasted valuable judicial resources in both state and federal court. Under these circumstances, the Court's dismissal of these proceedings would preserve the proper purpose of this judicial forum.

2.  The evidence in the record already before this Court clearly shows that the Debtor is not an innocent victim of sudden marketplace surprises or overwhelming creditor claims that necessitated the need for statutory protection in order to return an otherwise profitable enterprise to health. Rather, the evidence clearly reveals that this case falls squarely within the Eleventh Circuit's mandate for dismissal. Specifically:

> (i) the Debtor generates no revenue and has been a failing entity for quite some time due primarily to mismanagement, including excess insider payments, and has no reasonable expectation of restructuring;
>
> (ii) this matter is simply a two party dispute as the Debtor has only one major creditor, which is LEN, and these parties remain engaged in litigation in the appropriate state court forum;
>
> (iii) the Debtor negotiated several pre-petition forbearance agreements that already provided Debtor more than 1 year to restructure its failing operations (which it could not do) and the Debtor acknowledged in the final forbearance agreement that any subsequent bankruptcy filing would be solely for delay purposes in order to frustrate LEN's undisputed lien rights, entitle LEN to immediate stay relief, and such bankruptcy filing would specifically constitute a bad faith filing; and
>
> (iv) the Debtor has abused this Court system for the sole purpose of attempting to forum shop in a last minute effort to obtain a tactical litigation advantage against LEN, when such two party dispute is already pending in the appropriate state court jurisdiction.

3.  The Debtor is unable to contradict the evidence supporting these facts. Any one of these facts might be sufficient to establish bad faith. When the Court considers these facts together, they are more than the law requires to dismiss this case. Accordingly, LEN respectfully requests that

the Court dismiss this Chapter 11 case as a bad faith filing or, alternatively, grant LEN immediate stay relief to pursue all the rights and remedies available to LEN at law and equity.

## II.    BACKGROUND

### A.    Bankruptcy Filing

4.    On November 23, 2009 ("**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.    On November 24, 2009, the Court entered an Order [D.E. #11] authorizing the Debtor to continue operating its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

6.    To date, the United States Trustee has not appointed a creditors' committee.

7.    On December 7, 2009, Debtor filed an Emergency Motion to, *inter alia*, Obtain Post Petition Financing [D.E. #20].  LEN objects to Debtor's request and intends to document such objection through a separate filing.

### B.    Debtor Operations

8.    The Debtor is a Florida limited liability company, organized and existing under the laws of the State of Florida, and, upon information and belief, its sole member is U.S. Enterprises of CF, LLC.

9.    According to the Debtor's Chapter 11 Case Management Summary [D.E. #25], the Debtor has no employees and merely owns 626 developed townhome lots located on approximately 120 acres of land in Osceola County, Florida (**"Property"**).

**C.    Debtor's Pre-Petition Indebtedness to LEN**

10.    LEN is the holder of certain loan documents, including, Notes, Mortgage, Security Agreements, Financing Statements, Assignment of Rents, Guaranties and other loan documents (collectively "**LEN Loan Documents**")[3/] which grant LEN: (i) a senior mortgage on the Debtor's Property; (ii) a fully perfected first priority lien on and a security interest in all rents, as that term is more fully described in the Assignment of Rents, derived from the Property, and other property; and (iii) a fully perfected first priority lien on, and security interest in, the Collateral, as that term is more fully defined in the Security Agreements and Financing Statements.

11.    The LEN Loan Documents grant LEN a blanket lien on virtually all of Debtor's property, including without limitation, the Property, Rents and Collateral ("**LEN's Security**"). LEN's Security also includes real property owned by non-debtors.  Based on information and belief, LEN submits that the Debtor has no equity in any of the property that constitutes LEN's Security. Further, LEN submits that LEN's Security encompasses "cash collateral" as that term is defined by the Bankruptcy Code ("**Cash Collateral**").

12.    Under the LEN Loan Documents, the Debtor owes LEN as of the Petition Date in excess of $14.9 million, plus interest, default interest, late charges, attorneys' fees, costs and other expenses relating to the enforcement of the Notes ("**LEN Indebtedness**").[4/]

---

[3/]The Loan Documents were assigned to LEN by the Debtor's prior lender, Seacoast National Bank, on or about September 18, 2009.  For purposes of this Motion, all reference to the loan documents, including loan documents executed prior to the assignment to LEN, shall be referred to as the LEN Loan Documents.

[4/]This amount is provided for informational purposes only.  LEN reserves the right to amend this amount in order to accurately reflect the LEN Indebtedness.

**D.    The Pre-Petition Forbearance Agreements and Waivers**

13.    On three pre-petition occasions, namely, November 14, 2008, January 15, 2009, and March 9, 2009, the Debtor negotiated for forbearance of the rights and remedies available under the LEN Loan Documents. As a result of such negotiations, the Debtor entered into detailed forbearance agreements on each of these aforementioned dates that exchanged substantial consideration between each other in an effort to provide the Debtor with an opportunity to restructure and repay its obligations due under the LEN Loan Documents. Importantly, the parties provided in the final forbearance agreement, dated March 9, 2009 (**"Forbearance Agreement"**), attached hereto as **Exhibit A**, the following language:

**ABSENCE OF DEFENSES TO ENFORCEMENT/BANKRUPTCY STAY RELIEF:**

The Borrower and Guarantor hereby acknowledge and agree that . . . **In consideration of Lender entering into this Agreement and forbearing from acting on Borrower's Loan default, the Borrower and Guarantor agree and hereby stipulate that any of them file for bankruptcy protection, the automatic stay should at the request of Lender be immediately lifted or modified in a fashion which permits Lender to proceed with its foreclosure action, a judicial foreclosure sale and its other creditor remedies under the Loan Documents. Relief from the bankruptcy stay should be afforded Lender for a number of reasons including the fact that the Borrower, as owner of the Property, is a single purpose entity, has few unsecured creditors and it is highly unlikely that any significant benefit to unsecured creditors will be achieved by bankruptcy reorganization. Borrower and Guarantor hereby agree that the filing of a bankruptcy proceeding under any chapter of the Bankruptcy Code will be for the sole purpose of delaying the Lender in pursuing its foreclosure and other legal and equitable remedies and will constitute bad faith bankruptcy filing under the Bankruptcy Code.**

Forbearance Agreement, at p. 5-6, ¶ 9. (Emphasis added).

E.      **Pre-Petition State Court Litigation Between LEN and Debtor**

14.      Prior to the Petition Date, LEN sued the Debtor and other parties to collect the Len Indebtedness, but that litigation has been stayed with respect to the Debtor by the automatic provisions of the Bankruptcy Code. The state court litigation is pending in the Ninth Judicial Circuit in and for Osceola County, Florida, as *Len Paradise, LLC v. Paradise Palms, L.L.C., et al*, Case No. 09-CA-10778-CI (**"State Court Litigation"**).

III.     **RELIEF REQUESTED**

A.     **THE COURT SHOULD DISMISS THIS CASE AS A BAD FAITH FILING**

(i)     **THIS CASE MEETS THE ELEVENTH CIRCUIT STANDARDS FOR DISMISSAL PURSUANT TO THE BANKRUPTCY CODE**

15.      The Eleventh Circuit has mandated that a bad faith bankruptcy filing constitutes "cause" for dismissal of the case under Bankruptcy Code § 1112(b). *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984).

16.      According to the Eleventh Circuit in *Phoenix Piccadilly*, there is no particular test for determining whether a debtor has filed a petition in bad faith; rather, courts are free to consider factors that evidence an "intent to abuse the judicial process and the purposes of the reorganization provisions," in particular, factors that evidence that the debtor has filed a petition "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly*, Ltd., 849 F.2d at 1394-95 (citing *In re Albany Partners, Ltd.*, 749 F.2d at 674).

17.      In evaluating whether a debtor has filed a petition in bad faith, the Eleventh Circuit has identified several circumstantial factors evidencing bad faith:

| (i) | The debtor has only one asset, in which it does not hold legal title; |
|---|---|
| (ii) | The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; |
| (iii) | The debtor has few employees; |
| (iv) | The property is the subject of a foreclosure action as a result of arrearages on the debt; |
| (v) | The debtor's financial problems involve essentially a dispute between the debtor and the secured creditor which can be resolved in the pending state court action; and |
| (vi) | The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. |

*See In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394-95.

18.     The Eleventh Circuit did not conclude that these factors are exhaustive or that any one of these factors must be present.  Bankruptcy Courts have held that the *Piccadilly* factors are applicable to single asset real estate cases, such as the case here, and that "[s]ingle asset real estate Chapter 11 filings are routinely dismissed where . . . it is obvious that the proceeding was commenced solely to prevent mortgagees from foreclosing on the property at issue."  *In re State Street Houses, Inc.*, 305 B.R. 726, 737 (Bankr. S.D. Fla. 2002) (citing *In re Phoenix Piccadilly, Ltd.* 849 F.2d at 1394-95; *In re Midway Inves.*, 187 B.R. 382, 389 (Bankr. S.D. Fla. 1995); and *In re Colonial Manor Assocs., Ltd.*, 103 B.R. 315, 318-320 (Bankr. M.D. Fla. 1989).

19.     The Eleventh Circuit has held further that if a court's evaluation of these factors supports a finding of bad faith then the bankruptcy court must not delay the dismissal in order to provide the debtor with an opportunity to restructure through a plan since, regardless of whether the debtor has equity in its property, the taint of the bad faith filing extends to any potential plan for reorganization.  *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp)*, 825 F.2d 296, 298 (11th Cir. 1987) (holding that Congress did not intend for the courts to delay dismissal to allow

the debtor to submit a plan for reorganization that the court cannot otherwise confirm due to the presence of bad faith). Thus, arguably the Eleventh Circuit's ruling stands for the proposition that not only should the Bankruptcy Court dismiss a case if bad faith is present, indeed the bankruptcy court **must** **dismiss** the case as there is no prospect for reorganization through a plan by operation of law. The Eleventh Circuit revisited this issue in *In re Phoenix Piccadilly, Ltd.*, as it rejected debtor's argument that the court cannot dismiss a case for bad faith if there is a potential for a successful restructuring. Specifically, the Eleventh Circuit held:

> Because the bankruptcy court found that a bad faith filing had occurred, it properly did not change the consequences of that finding simply because of the debtor's possible equity in the property or potential for successful reorganization. We reject the debtor's argument that the bankruptcy court cannot ever dismiss a case for bad faith if there is equity in the property because the presence of equity indicates the potential for a successful reorganization. Rather, as this Court stated in *In re Natural Land*:
>
>> 'the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement. In light of this conclusion, we cannot say that Congress intended that a creditor's rights be delayed merely to allow the bad faith debtor to present a reorganization plan which, as a matter of law, could not be approved by the court.'
>
> *Id., citing Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp)*, 825 F.2d 296, 298 (11th Cir. 1987) (**noting that the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith**).

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1395. *See also In re Lotus Investments, Inc.*, 16 B.R. 592, 594 (Bank. S.D. Fla. 1981) (secured creditor demonstrated bad faith justifying dismissal of case and stay relief despite the fact that their was equity in the debtor's property).

20.     The debtor has the burden of proof to show that its bankruptcy petition was filed in good faith. *See In re Lotus Investments, Inc.*, 16 B.R. at 595; *In re RAD Properties, Inc.*, 84 B.R. 827, 829 (Bank. M.D. Fla. 1988).

21.     As set forth above and summarized below, most of the *Phoenix Piccadilly* factors evidencing bad faith are present in this case:

> (i)     The Debtor's only asset consists of the Property.
> (ii)    The Debtor has few unsecured creditors.
> (iii)   The Debtor has no employees and no business operations or income.
> (iv)    The Debtor stopped making loan payments to LEN nearly 1 year prior to the Petition Date.
> (v)     As of the Petition Date, the LEN Indebtedness related to the Debtor's Property was the subject of the State Court Litigation and the expansion of this matter to include foreclosure relief was imminent.
> (vi)    The Debtor's financial problems involve essentially a dispute between the Debtor and LEN which can be resolved in the pending State Court Litigation.
> vii.    The timing of the Debtor's filing of its Chapter 11 petition was just a few days after attempting to bring a counter-claim against LEN in the State Court Litigation and just prior to LEN seeking to expand the State Court Litigation to include foreclosure relief.

22.     Florida bankruptcy courts have firmly established that "Chapter 11 is not intended to be used simply as a means of preventing a creditor from enforcing its claims." See *In re Mildevco, Inc.*, 40 B.R. 919, 193 (Bank. S.D. Fla. 1984). Rather, the purpose of Chapter 11 is to assist financially distressed companies by providing them certain protections in order to return to a profitable state. The purpose of the Debtor filing this case, however, is to frustrate LEN's right to

pursue its State Court Litigation and prevent LEN from otherwise foreclosing its mortgage. The Debtor's business has been failing for over a year and the Debtor has not made any payments to LEN since approximately June 30, 2009, evidencing the fact that the Debtor's filing of Chapter 11 was due to the progression of the State Court Litigation and not an intent to revive the business. In fact, but for LEN's considerable forbearance relief, the mismanagement of the Debtor's operations and complete lack of equity would have already sealed the Debtor's fate.

23. The Debtor's last minute attempt to proceed with an attack against LEN in the bankruptcy forum, given the single purpose structure of this Debtor, its total lack of revenue and operations, and despite the Debtor's clear waivers of defenses, offsets, and claims of any kind in the Forbearance Agreement, is a blatant waste of judicial resources and clear evidence of bad faith. Accordingly, there is ample evidence for the Court to dismiss this case as a bad faith filing.[5]

---

[5]Specifically, the Forbearance Agreement provides at p. 6, ¶9:

The Borrower and Guarantor hereby acknowledge and agree that the Mortgage, Note and the other Loan Documents and the Original Forbearance Agreement are valid and enforceable in accordance with their terms and that neither the Borrower nor Guarantor has any defenses (whether legal or equitable), counterclaims (whether compulsory or permissive), or direct claims against Lender (nor Lender's officers, directors, shareholders, employees, agents and counsel) of any type whether related to the Loan or not, or offsets of any kind or nature against the Lender under the Note, Mortgage, the Loan Documents, the Original Forbearance Agreement or otherwise. To the extent Borrower or Guarantor have any such defenses, counterclaims, direct claims, or offsets they are hereby waived and extinguished in consideration of the Lender's continued forbearance hereunder and the other covenants set forth herein.

**(ii)    THIS CASE ALSO MEETS THE FLORIDA MIDDLE DISTRICT BANKRUPTCY COURT STANDARDS FOR DISMISSAL**

**(a)    The Court Should Enforce the Pre-Petition Agreement Concerning Bad Faith and Stay Relief**

24.    As the record clearly evidences, the Debtor included acknowledgments in the Forbearance Agreement concerning the bad faith nature of any subsequent bankruptcy filing and an agreement to waive stay relief defenses and allow for immediate stay relief in such event.  The parties specifically bargained for these provisions in the final Forbearance Agreement.  The inclusion of this language constituted new, material consideration that induced LEN to enter into the Forbearance Agreement when it otherwise could have exercised its full legal and equitable rights and remedies.  LEN respectfully requests that the Court enforce these provisions against the Debtor.

25.    The Florida Middle District Bankruptcy Court has routinely enforced pre-petition agreements that contain debtor consents to stay relief and acknowledgments that a subsequent bankruptcy filing would constitute a bad faith filing.  *See In re Excelsior Henderson Motorcycle Manufacturing Co., Inc.,* 273 B.R. 920, 923-924 (Bankr. S.D. Fla. 2002)(Southern District Judge Hyman noting there is a plethora of authority within the Bankruptcy Courts of the Middle District of Florida regarding the enforcement of pre-petition agreements concerning stay waiver and bad faith intent) citing *In re Citadel Prop., Inc.*, 86 B.R. 275 (Bankr. M.D. Fla.1988); *In re International Supply Corp.*, 72 B.R. 510 (Bankr. M.D. Fla.1987); and *In re Gulf Beach Dev. Corp.,* 48 B.R. 40 (Bankr. M.D. Fla.1985).  In all these cases, the courts concluded that the pre-petition agreements were enforceable and therefore dismissed the cases and/or granted stay relief.  Subsequent to these

rulings, Judge Paskay revisited this long established precedent with the following holding in the case

*In re University Commons, L.P.,* 200 B.R. 255, 259 (Bankr. M.D. Fla. 1996),

> The undisputed facts as revealed in this record clearly put the Debtor in an indefensible position when one applies the [dismissal] factors set forth in *Little Creek*, supra. However, **this case is even worse than any of the cases cited which dealt with this issue because, in this particular case, the Debtor in the [pre-petition agreement] agreed that in the event the Debtor seeks relief in the Bankruptcy Court, Barnett will be entitled to lift the automatic stay forthwith and obtain a dismissal of its case on the basis it was filed in bad faith**. In addition, the Debtor conceded in the Settlement Agreement that its rehabilitation or reorganization efforts are not consistent with the Congressional intent and the dismissal of the Chapter 11 case would be in the best interest of all parties.
>
> Thus, this case squarely matches the facts involved in the case of *In re Orange Park South Partnership*, 79 B.R. 79 (Bankr. M.D. Fla.1987), in which the Debtor also conceded and stipulated that it had no valid defense to the claim of the mortgagee and also conceded that, in the event the Debtor sought relief in the Bankruptcy Court, it agreed that the Petition was filed solely for the purpose of delay. The proposition that nevertheless the Debtor should be given an opportunity to proceed and attempt to present its plan of reorganization has been flatly rejected by the 11th Circuit Court of Appeals, *In re Natural Land Corporation*, 825 F.2d 296, 298 (11th Cir.1987), which stated:
>
> > 'the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.'
>
> The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.
>
> There is no allegation or showing here, as was contended in Orange Park South, supra, that the concession made by the Debtor when it entered into the Settlement Agreement was the result of duress or overreaching, and this Court is satisfied that the stipulation set forth in the Settlement Agreement is binding on the Debtor and the Debtor cannot escape its consequences.
>
> Based on the foregoing, this Court is constrained to concur with the principles set forth in the cases *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re*

*Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988); *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986), but also is satisfied that **the Debtor is bound to the terms of the Settlement Agreement and for this reason it is appropriate to grant the [dismissal] sought by Barnett**.

*In re University Commons, L.P.,* 200 B.R. 255, 259 (Bankr. M.D. Fla. 1996). (Emphasis added).

Upon reconsideration, Judge Paskay examined the debtor's and other interested creditors' arguments that the pre-petition admissions and waivers were not the product of judicial review or approval and that dismissal was not in the best interest of the creditors – who were not parties to the pre-petition agreements. Judge Paskay rejected these arguments and held:

Regardless of whether or not it was approved, in this Court's view it is of no consequence absent a showing that the Debtor was coerced or tricked into signing the stipulation, of which there is no allegation, let alone any proof.

. . .

The fact remains that this record leaves no doubt that the last minute gasp by this Debtor to stave off the inevitable, i.e., the loss of its one and only asset, by filing a [bankruptcy petition], has all the hallmark of a bad faith filing.

. . .

Of course, the claimed lack of proper notice is no solace to the Debtor who received proper notice, neither is the claimed substantial equity in its sole asset. As stated by the Eleventh Circuit in the case of *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987), 'the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by the debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.' Accordingly, no amount of equity can cleanse a Petition filed in bad faith. See also, *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988).

. . .

The fact that the dismissal is not in the best interest of the unsecured creditors is also without significance. This fact is equally irrelevant when the Petition was filed in bad-faith and it is never in the best interest of creditors to permit a mortgagee to

enforce its bargained for right and to foreclose the mortgage in case the mortgagor defaults.

*In re University Commons, L.P.,* 204 B.R. 80, 82 (Bankr. M.D. Fla. 1996).

26.     Similarly, the case before the Court contains all of the same facts that each of the

Florida Middle District Bankruptcy Court Judges found to be clear evidence of a bad faith filing.

In fact, not only did the Debtor agree to allow LEN immediate relief from the automatic stay in the

event of a bankruptcy filing, the Debtor further agreed and acknowledged that:

> **Borrower, as owner of the Property, is a single purpose entity, has few
> unsecured creditors and it is highly unlikely that any significant benefit to
> unsecured creditors will be achieved by bankruptcy reorganization. Borrower
> and Guarantor hereby agree that the filing of a bankruptcy proceeding under
> any chapter of the Bankruptcy Code will be for the sole purpose of delaying the
> Lender in pursuing its foreclosure and other legal and equitable remedies and
> will constitute a bad faith bankruptcy filing under the Bankruptcy Code.**"

Forbearance Agreement at p. 6, ¶ 9.  (Emphasis added).

27.     Similarly, Judge Hyman of the Bankruptcy Court for the Southern District of Florida,

ruled in the more recent case, *In re Excelsior Henderson Motorcycle Manufacturing Co., Inc.,* 273

B.R. 920, 923-924 (Bankr. S.D. Fla. 2002), that:

> Enforcing the Debtor's agreement under these conditions does not
> violate public policy concerns. This is not a situation where a
> prohibition to opposing a motion to relief from stay was inserted in
> the original loan documents. The Debtor received significant benefits
> under the Third Modification and the confirmed plan treatment of
> [the lender].  In exchange for these benefits, the Debtor bargained
> away its right to oppose a motion to lift stay in a subsequent
> bankruptcy proceeding. Accordingly, the court will not consider the
> objection to relief from stay filed by the Debtor.

*Id.*, citing *In re Atrium High Point Ltd. Partnership*, 189 B.R. 599, 607 (Bankr. M.D. N.C. 1995).

Judge Hyman emphasized the fact that courts should enforce such pre-petition agreements as they are a necessary part of out-of-court restructurings – something every court should favor. Specifically, Judge Hyman held:

> Having determined that the Debtor received valuable consideration in exchange for a benefit it would receive under the Bankruptcy Code, the Court agrees with the holding in *Atrium*, and finds that the provision waiving the automatic stay is specifically enforceable. To hold otherwise would belie the rationale behind entering into such pre-petition stipulations. As stated most aptly by Judge Paskay in *In re B.O.S.S. Partners I*, 37 B.R. 348 (Bankr. M.D. Fla. 1984), 'a stipulation freely entered into by the parties is binding on the parties. In the context of a stay litigation, such stipulation operates as a waiver by the debtor of any right to obtain protection from the Court against proceedings instituted by a secured party for the purpose of enforcing its security interest.' *Id*. at 350-51.

> Additionally, the Court finds that the enforcement of such agreements furthers the public policy in favor of encouraging out of court restructuring and settlements. 'Bankruptcy courts may be an appropriate forum for resolving many of society's problems, but some disputes are best decided through other means.' *In re Cheeks*, 167 B.R. 817, 819 (Bankr. D. S.C. 1994). In the instant case, the Debtor has once received the full benefit of the automatic stay. Under the Note and the Plan, the Debtor gained an opportunity to start a new payment schedule which would prevent further action as long as the Debtor made the agreed payments. To allow the Debtor to again receive the benefits of the automatic stay would be inconsistent with this Court's policy of favoring settlement agreements.

*In re Excelsior,* 273 B.R. 920, 923-924 (Bankr. S.D. Fla. 2002).

### (b) The Court Should Dismiss this Case Because there is No Reasonable Chance for Reorganization

28.     This case is similar to the facts and circumstances in *In re Brandywine Assoc.'s Ltd.*, 85 B.R. 626 (Bank. M.D. Fla. 1988). In *Brandywine*, the debtor (i) had no employees, (ii) had no material unsecured creditors, (iii) had been unable to generate sufficient cash flow to service its debt, and (iv) filed bankruptcy merely to delay a foreclosure. *Id*. at 628. Furthermore, the testimony of

the debtor's principals established that the filing of a petition was due to the imminent foreclosure action, after the debtor was unable to extract concessions from the secured creditor. *Id*. The debtor promised that money would be forthcoming post-petition, but the court still found that it would be unlikely that the debtor would be able to meet its debt service obligations and successfully reorganize. The court ultimately granted the secured creditor's motion to dismiss *Brandywine* as a bad faith filing. *Id*.

29.     The Court should dismiss this case based upon *Brandywine*. Here, LEN actually provided the Debtor with concessions pre-petition in the form of the Forbearance Agreement in exchange for the material concessions from the Debtor which included the bad faith acknowledgment and stay relief waiver. The promise of new-found money "cannot transform a bad faith filing into one undertaken in good faith." *In re Phoenix Piccadilly*, 849 F.2d at 1395, *citing Natural Land Corp.*, 825 F.2d at 298.

30.     Moreover, the likelihood of the Debtor being able to service its debt obligations and reorganize is negligible in this case given the size of the debt and the absence of any revenues. Under the Eleventh Circuit ruling in *In re Natural Land Corp.,* the bad faith taint of the filing extends to any proposed plan of reorganization and prevents confirmation in any event. 825 F.2d at 298. Thus, like *Brandywine*, the Court should dismiss this case even in the face of the promise of new money.

31.     The Debtor may argue that this filing reflects a sincere attempt to return the business to a viable state similar to the filing in *In re Harco Co. of Jacksonville, LLC*, 331 B.R. 453 (Bank. M.D. Fla. (2005). Simply put, *In re Harco Co. of Jacksonville, LLC* is inapposite. Specifically, in

*In re Harco*, Judge Proctor considered that (i) the debtor's business was generating much more money months after the petition date than it did leading up to the petition date such that revenue exceeded expenses by more than $10,000 per month (most of which was being reinvested into the property), (ii) the debtor's principals sold their personal property and lent the money directly to the debtor to pay its secured creditors, and (iii) the debtor's principals waived their rights to compensation during the pendency of the case. *Id.* at 459.

32.     The facts here are exactly the opposite of *In re Harco*.  In this case, the Debtor (i) has been unable to generate enough money to service its normal operating expenses, let alone its secured debt obligations, for quite some time prior to the filing and this deficit is growing post-petition, (ii) the Debtor's principals have not funded any payments to the Debtor or LEN, but rather have received pass-through payments from the Debtor due to the fact that they hold interests in certain of the Debtor's creditor companies including, without limitation, insider entities Paradise Palms Vacation Properties and Management, LLC and Paradise Palms Resort Club, LLC, and (iii) the Debtor's principals have been drawing and continue to draw above-market salaries in this depressed economy.

33.     The Court should not condone the Debtor's Chapter 11 filing simply to prevent LEN from enforcing its rights in the State Court Litigation.  Accordingly, the Court should dismiss the Debtor's Chapter 11 case as a bad faith filing.

## IV.     ALTERNATIVELY, LEN RESPECTFULLY REQUESTS RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 362(d)(1)

34.     The Eleventh Circuit has held that a bad faith bankruptcy filing constitutes sufficient cause for relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Phoenix Piccadilly*, 849 F.2d at 1394; *In re Lotus Investments, Inc.*, 16 B.R. at 595-96; *see*

*also In re Star Trust*, 237 B.R. 827, 833 (Bank. M.D. Fla. 1999). The test for bad faith is the same for both dismissal and for relief from the automatic stay. *See In re Phoenix Piccadilly*, 849 F.2d at 1394. In addition, the Florida Middle District Bankruptcy Court has enforced pre-petition stay relief waivers the same as it has with pre-petition acknowledgments that subsequent bankruptcy filings would constitute bad faith. *See In re University Commons,* 200 B.R. at 259.

35.     Moreover, although LEN understands that a current appraisal, the Debtor's recent Chapter 11 Case Management Summary [D.E. #25] reflects a value far below the amounts due under the LEN Loan Documents (which LEN shall place in the record under separate filing). Without question, the Property continues to decline in value as a result of the stay and there can be no adequate protection for several reasons including, without limitation, that there is no income, no equity cushion, and no prospect for a successful reorganization.

36.     In addition, all the Debtor's pleadings, including the request for emergency debtor-in-possession financing [D.E. # 20], to which LEN objects and shall document by separate objection, are devoid of any reference to any equity cushion in the Property. The fact that there is no equity in the Property is supported by the Debtor's own acknowledgments in the Forbearance Agreement and the other two forbearance agreements predating same. Accordingly, the Debtor cannot dispute that the obligations under the LEN Loan Documents exceed the current value of the Property.

37.     As demonstrated above, the Debtor's bankruptcy filing in these circumstances is a classic bad faith filing. Thus, in the alternative, LEN requests relief from the automatic stay in order to proceed with the State Court Litigation and expand relief therein to include foreclosure and proceed through the sale of the Property.

**V.     CONCLUSION**

38.     For the reasons set forth above, LEN respectfully requests that the Court (i) dismiss the Debtor's Chapter 11 bankruptcy case as a bad faith filing, or, alternatively (ii) grant relief from the automatic stay to LEN in order to prosecute the State Court Litigation and proceed to foreclosure judgment on its mortgage liens, including the sale of LEN's collateral, and (iii) grant such further relief as the Court deems to be just and proper.

Dated:  December 11, 2009.

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.**
Museum Tower Building, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:      (305) 789-3495

By  _/s/ Jonathan C. Vair_
       JONATHAN C. VAIR
       Florida Bar No. 080977
       jvair@stearnsweaver.com

**ATTORNEYS FOR LEN PARADISE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 11, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via (i) transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notices of Electronic Filing in this case, or (ii) by U.S. Mail on all counsel of record and parties-in-interest as identified on the attached Service List.

*/s/ Jonathan C. Vair*
JONATHAN C. VAIR

103986.1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:09-bk-17926-KSJ (Chapter 11)

In Re:  PARADISE PALMS, LLC

<u>**SERVICE LIST**</u>

The following parties are registered to receive Notice of Electronic Filing and should have been
served through CM/ECF.

EFO Financial Group, LLC
c/o Louis X. Amato, P.A.
P.O. Box 1242
Frostproof, FL  33843
Louisa@louamato.com

Len Paradise, LLC
c/o Jonathan C. Vair, Esq.
Stearns Weaver Miller, et al.
150 West Flagler Street, Suite 2200
Miami, FL  33130-1536
jvair@stearnsweaver.com
cgraver@stearnsweaver.com
tcotter@stearnsweaver.com

R Scott Shuker
Latham Shuker Eden & Beaudine LLP
P.O. Box 3353
Orlando, FL 32802
bankruptcynotice@lseblaw.com

United States Trustee – ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801
USTP.Region21.OR.ECF@usdoj.gov
Jill.kelso@usdoj.gov

Westside Community Development District
c/o Jere Earlywine, Esq.
& Michael C. Eckert, Esq.
Hopping Green & Sams, P.A.
119 S. Monroe Street, Suite 300
P.O. Box 6526
Tallahassee, FL  32314
jeree@hgslaw.com
michaele@hgslaw.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:09-bk-17926-KSJ (Chapter 11)

In Re: PARADISE PALMS, LLC

**<u>SERVICE LIST</u>**

The following parties were served via U.S. Mail:

United States Bankruptcy Court
135 West Central Blvd., Suite 950
Orlando, FL 32801

Admiral Security
4401 East West Hwy., Suite 500
Bethesda, MD 20814

American Comm Networks Inc.
4400 PGA Blvd., Suite 902
Palm Beach Gardens, FL 33410

American Comm Networks Inc
4400 PGA Blvd., Suite 902
Palm Beach Gardens, FL 33410

American Express
P.O. Box 360001
Fort Lauderdale, FL 33336-0001

Baker Hostetler
P.O. Box 70189
Cleveland, OH 44190

Bank of America
P.O. Box 15710
Wilmington, DE 19886-5710

Blue Cross & Blue Shield of Florida
P.O. Box 105358
Atlanta, GA 30348-5358

City Insurance Agency, Inc.
2929 N University Drive, Suite 107
Coral Springs, FL 33065

Craftbuilt Homes
6165 Lake Lizzie Drive
Kissimmee, FL 34771

Dept of Comm Dev
1 Courthouse Square, Suite 1400
Kissimmee, FL 34771

Discount Propane
546 S. Shell Road
Debary, FL 32713

Dynafire, Inc.
109 B Concord Drive
Casselberry, FL 32707-3270

E-Pass Service Center
762 S. Goldenrod Road
Orlando FL 32822

Engage Technologies
8419 Sunstate Street
Tampa, FL 33634

Florida Department of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Florida Pest Control
3300 Commerce Blvd.
Kissimmee, FL 34741-4654

Helgent Gas Co.
P.O. Box 24246
Omaha, NE 68124-0246

IKON Financial Services
P.O. Box 740540
Atlanta, GA 30374-0540

IKON Office Solutions
P.O. Box 532530
Atlanta, GA 30374-0540

IQware, Inc.
600 Hillsboro Blvd., W #201
Deerfield Beach, FL 33441-1610

Ikon Financial Services
P.O Box 740540
Atlanta, GA 30374-0540

Ikon Financial Services
Bankruptcy Administration
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708

Invisible Waste Services
P.O. Box 888405
Grand Rapids, MI 49588-8405

Kua #2108842-1115308
P.O. Box 850001
Orlando, FL 32825-0096

Kua #2108842-1115728
P.O. Box 850001
Orlando, FL 32825-0096

Kua #2108842-1116568
P.O. Box 850001
Orlando, FL 32825-0096

Kua #2108842-1116578
P.O. Box 850001
Orlando, FL 32825-0096

Kua #2108842-1118248
P.O. Box 850001
Orlando, FL 32825-0096

Len Paradise LLC
600 N. Westshore Blvd., Suite 900
Tampa, FL 33609

Osceola County Tax Collector
Attn:  Patsy Heffner
P.O. Box 422105
Kissimmee FL 34742-2105

Outdoor Living Pool
4031 West 1st Street (SR 46)
Sanford, FL 32771

Paradise Palms, LLC
8950 Paradise Palms Boulevard
Kissimmee, FL 34747-1579

Patsy Heffner, Tax Collector
P.O. Box 422105
Kissimmee, FL 34742-2105

Peter L. Desiderio, Esq.
Stearns Weaver, et al.
200 E. Las Olas Blvd., Suite 2100
Fort Lauderdale, FL 33301

Pitney Bowes
P.O. Box 856390
Louisville, KY 40285-6390

Poolsure
P.O. Box 55372
Houston, TX 77255-5372

Progress Energy
P.O. Box 33199
St. Petersburg, FL 33733-8199

Progress Energy #12613-83136
P.O. Box 33199
St. Petersburg, FL 33733-8199

Progress Energy #42934-88136
P.O. Box 33199
St. Petersburg, FL 33733-8199

Progress Energy #42964-84550
P.O. Box 33199
St. Petersburg, FL 33733-8199

Progress Energy #73583-52287
P.O. Box 33199
St. Petersburg, FL 33733-8199

Progress Energy #92645-18504
P.O. Box 33199
St. Petersburg, FL 33733-8199

R Scott Shuker
Latham Shuker Eden & Beaudine LLP
P.O. Box 3353
Orlando, FL 32802

Ringcentral
999 Baker Way, 5th Floor
San Mateo, CA 94404

SEC Branch of Reorganization
3475 Lenox Rd., NE #1000
Atlanta, GA 30326

Seacoast National Bank Loan Operations
P.O. Box 9012
815 Colorado Avenue
Stuart, FL 34994

Securities Exchange Commission
175 West Jackson St., Suite 900
Chicago, IL 60604-2615

Southern Datacomm Inc.
P.O. Box 933313
Atlanta, GA 31193

Sprint
P.O. Box 105243
Atlanta, GA 30348-5243

Tohopekaliga Water Authority
101 N Church Street
Kissimmee, FL 34741

U.S. Enterprises of CF, LLC
801 Oak Shadows Road
Celebration, FL 34747

U.S. Home Corporation
600 N. Westshore Blvd., Suite 900
Tampa, FL 33609

United Fire Protection
2900 Shader Road
Orlando, FL 32808

United States Trustee – ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801

Waste Services of Florida, Inc.
P.O. Box 6418
Carol Stream, IL 60197-6418

Zenith Insurance Company
4415 Collections Center Drive
Chicago, IL 60693

# **EXHIBIT A**

## AMENDED AND RESTATED FORBEARANCE AGREEMENT

This Agreement is made and effective March 9, 2009, without regard to the date of execution, by and among **SEACOAST NATIONAL BANK, f/k/a FIRST NATIONAL BANK AND TRUST COMPANY OF THE TREASURE COAST, a National Banking Association**, hereinafter referred to as "Lender" and **PARADISE PALMS, L.L.C., a Florida limited liability company**, hereinafter referred to as "Borrower" and **ANDREW LAROSA, RONALD ABATE, JOSEPH ROGERS, U.S. ENTERPRISES OF CENTRAL FLORIDA CORP., a Florida corporation, and U.S. ENTERPRISES OF CF, L.L.C., a Florida limited liability company,  and PARADISE PALMS RESORT CLUB, LLC., a Florida limited liability** hereinafter collectively referred to as "Guarantor"

RECITALS:

WHEREAS, the Lender is the owner and holder of that Promissory Note ("Note") dated July 9, 2007, in the original principal amount of Fifteen Million and no/100 Dollars ($15,000,000.00), which Note is secured by a mortgage recorded in O.R. Book 2865, Page 2508, which Mortgage was modified by that certain Note and Mortgage Modification Agreement recorded in O.R Book 3522, Page 0275, all of the Public Records of Osceola County, Florida (collectively "Mortgage") which evidence Lender's loan ("Loan") to Borrower in said principal amount; and

WHEREAS, the Loan provided financing for the development of the land which is more particularly described in the Mortgage ("Property") into (a)  existing or contemplated phases of platted lots consisting of Phase I containing 160 lots for which a plat has been recorded, Phase II containing 184 lots for which a plat has been prepared but has not yet been recorded, Phase III containing 228 lots which is depicted on the master plan for the Property but has not had a plat prepared or recorded and Phase IV containing 92 lots  which is depicted on the master plan for the Property but has not had a plat prepared or recorded  (collectively "Lots") that are improved with  subdivision site improvements and community amenities  and held for sale by Borrower to U.S. HOME CORPORATION, a Delaware corporation ("USH")  and  third party residential builders and (b) a tract improved with buildings, improvements and recreational and other facilities for the use and enjoyment of the owners of the Lots ("Club Property and Facilities") whose operations are administered by PARADISE PALMS RESORT CLUB, LLC which has, upon or before the execution of this Agreement become a guarantor of the Loan; and

WHEREAS, the Property has been subjected to a Declaration of Covenants, Conditions, Restrictions and Easement for Paradise Palms Resort which is recorded at O.R. Book 3429, Page 1741 Public Records of Osceola County, Florida ("HOA Declaration") which is administered by Paradise Palms Resort Homeowners Association, Inc., a Florida not for profit corporation ("HOA") which HOA remains under the control of the Borrower and has not been turned over to the non-developer owners of Property; and

WHEREAS, the Loan is in default; and

WHEREAS, the parties entered into a Forbearance Agreement having an original effective date of November 14, 2008 ("Original Forbearance Agreement") which provided that the Lender's obligations to forbear from accelerating or foreclosing the Loan indebtedness expired on January 15, 2009. Pursuant to various amendments of the Original Forbearance Agreement thereafter, the Lender's obligations to forbear from accelerating or foreclosing the Loan indebtedness were extended to expire on March 9, 2009; and

WHEREAS, the parties are desirous of and have agreed to further amend, modify and restate the Original Forbearance Agreement as amended by all amendments prior to the execution of this Agreement such that this Agreement will supersede and replace the Original Forbearance Agreement in its entirety.

NOW THEREFORE, for and in consideration of the mutual promises hereinafter contained and for other good and valuable consideration the parties do agree that the foregoing Recitals are true and further agree as follows:

1. **DEBT CONFIRMATION/INTEREST ACCRUAL.** The parties do hereby confirm that the outstanding principal balance due under the Loan as of March 13, 2009 is Fourteen Million Seven One Thousand Four Hundred Thirty Two and 28/100 Dollars ($14,701,432.28) which outstanding principal balance will be subject to increase by Lender's advances under section 2 of this Agreement. Accrued and unpaid interest due from August 26, 2008 to and including March 13, 2009 upon the Loan (at the non default rate specified in the Note) is Four Hundred Forty One Thousand Nine Hundred Ninety Nine and 90/100 Dollars ($441,999.90). The Borrower does confirm Borrower's liability for principal, the accrued interest and all other sums due to Lender, including but not limited to accrued late fees, under the Note, Mortgage, and all other documents evidencing, collateralizing or delivered in connection with the Loan (collectively "Loan Documents) without offset, deduction, or defense. The Guarantor does confirm Guarantor's liability for said debt and liability under the Note evidencing said debt, the Mortgage, and all other Loan Documents including the guaranties for the Loan indebtedness without offset, deduction, or defense. The parties agree that interest at the non default rate specified in the Note shall continue to accrue on the unpaid principal of the Loan until the sooner of (a) this Agreement expiring under the expiration provisions expressly set forth herein or (b) the Borrower or Guarantor defaults hereunder.

2. **ADDITIONAL PRINCIPAL ADVANCES.** The parties acknowledge that Lender received; during the term of the Original Forbearance Agreement net proceeds from

Paradise Palms Amended Forbearance Agr V6 2

Borrower's sale of sixteen (16) Lots to USH which proceeds ("USH Sale Proceeds") were applied to reduce the unpaid principal of the Loan. Pursuant to the terms of the Original Forbearance Agreement, Lender made Loan principal advances, which Borrower and Guarantor hereby confirm were authorized and permitted under the terms of the Original Forbearance Agreement, of a substantial portion of the Loan principal which Lender received in the form of the USH Sale Proceeds. The parties have, prior to executing this Agreement, completed and approved a reconciliation of the Lender's receipt and re-advancement of the USH Proceeds as Loan principal advances and agree that so long as the Borrower and Guarantor do not default hereunder, the Lender shall disburse in addition to the currently outstanding Loan principal specified in section 1, the sum of $288,326,44 as Loan principal advances which shall be reserved by Lender for payment hereafter or paid by Lender with the following priority: first, to the payment of the 2008 ad valorem taxes and assessments on the platted portions of the Property which are due in the aggregate amount of $150,504.59 concurrent with the payment of the 2008-2009 fiscal year assessments due to Westside Community Development District for un platted portions of the Property in the aggregate amount of $70,515.62 and second, to the payment of expenses of the Club Property and Facilities as required or contemplated by the Club Agreement and to the payment of the HOA expenses as required or contemplated by the HOA Declaration and by the laws, rules and regulations now or hereafter applicable to the HOA and third, to payment of Borrower's bona fide operating expenses and Lot marketing expenses. Except as expressly stated in this section 2, Lender shall have no further or other obligation to make any other or further advances of any type or nature whatsoever notwithstanding anything expressly or impliedly contained in the Loan Documents to the contrary.

3. **ACKNOWLEDGEMENT OF DEFAULT.** Borrower and Guarantor hereby acknowledge that Borrower has defaulted under the Loan and has not paid and was unable to pay the interest payments due on September 26, 2008 and those monthly interest payments that have become due thereafter. Borrower and Guarantor acknowledge that they are unable to cure such past defaults.

4. **APPLICATION OF PROCEEDS FROM FUTURE PROPERTY SALES.** Provided neither the Borrower nor the Guarantor have defaulted under this Agreement, Lender agrees to partially release Lots upon receipt of Loan principal reduction payments ("Partial Release Payments") of (a) $5,000 per Lot for the first eight Lots sold, (b) $15,000 per Lot for the sale of Lots 9 through 16 inclusive, and (c) for the principal amount that is equal to the ratio of unpaid loan principal to each unsold Lot for all future Lot sales. The Partial Release Payments that shall be required for any Property that has not been platted into Lots by recorded plat shall be calculated as if it were platted into Lots in the number specified in the Recitals to this Agreement. No sale of the Club Property and Facilities shall be permitted without the express written consent of Lender which Lender may withhold or condition in its sole, absolute and arbitrary discretion. When Lender receives the Partial Release Payments the same shall be applied to reduce the unpaid principal of the Loan. As long as the Borrower and Guarantors are in full compliance with this Agreement and are otherwise operating the Club Property and Facilities and paying the expenses of the Club Property and Facilities in accordance with and as contemplated by that Club Operating and Amenities Use Agreement dated June 27, 2008 as amended by that First Amendment dated the 5th day of November, 2008 (the "Club Agreement"), and are operating the HOA in accordance with

and as contemplated by the HOA Declaration and by the laws now or hereafter applicable to the HOA and timely paying the expenses which the HOA is required to pay under the HOA Declaration and by law, the Borrower shall have the right to receive and decide how and when to apply any funds that remain available to the Borrower after the Lender receives the Partial Release Payments from future Lot sales, to payment of Borrower's bona fide operating expenses and to Lot marketing expenses.

5. **LOT SALE CONTACT APPROVAL RIGHTS.** All contracts governing the sale of one or more Lots or any of the Property shall be subject to Lender's inspection and written approval, however, Lender's inspection of such sale contracts will be restricted to determining, in the Lender's discretion, that each contract evidences a bona fide sale to bona fide third party purchaser and to determine that sufficient proceeds will be available to pay the required Partial Release Payment(s) to the Lender after payment of required closing costs and the required partial release amount or credit due to USH under the terms of its second mortgage which is secured by the Property. The Lender's written approval of the proposed closing statement for the sale of each Lot or any of the Property shall also be a necessary condition precedent to the Borrower closing upon such sale.

6. **ADDITIONAL GUARANTOR.** As part of the consideration for the Lender entering into this Agreement, the club operator, which is a direct affiliate of the Borrower and the Guarantor based on ownership and control, PARADISE PALMS RESORT CLUB, LLC., a Florida limited liability shall, concurrent with the execution of this Agreement execute and deliver an Unconditional And Continuing Guaranty Of Payment And Performance and all other existing Loan Documents in such form as the other persons and entities collectively constituting the Guarantor have entered into. PARADISE PALMS RESORT CLUB, LLC joined by Borrower and Guarantor as their interests may appear shall also execute and deliver such documents and agreements as Lender shall require to provide Lender with a fully perfected first lien priority security interest in and to all personal property, equipment, furniture, and fixtures located on or utilized in connection with the Club Property and Facilities together with a fully perfected first lien priority security interest in all revenues and receivables generated by or payable to PARADISE PALMS RESORT CLUB, LLC, Borrower or Guarantor from the ownership or operation of the Club Property and Facilities. All such documents and instruments shall constitute additional Loan Documents hereunder. PARADISE PALMS RESORT CLUB, LLC joined by Borrower and Guarantor represent and warrant to Lender with actual knowledge that Lender has in fact relied on such representation and warranty when entering into this Agreement, that other than PARADISE PALMS RESORT CLUB, LLC and Borrower there is no entity or person (who is not an officer, manager or agent of PARADISE PALMS RESORT CLUB, LLC) that has any administrative, management, financial or operational control or responsibility for the Club Property and Facilities.

7. **LENDER'S FORBEARANCE/AGREEMENT EXPIRATION.**
Provided the Borrower and Guarantor do not default under this Agreement and further provided there are no Loan defaults or Events of Default (as such term is defined under the Loan Documents) other than Borrower's failure to pay the Loan interest that is due prior to the expiration of this

Agreement, Lender agrees that (a) it will not accelerate or foreclose the Loan indebtedness prior to June 30, 2009 and (b) the expiration of this Agreement will extend to September 30, 2009, provided the Borrower makes principal reductions in the Loan (which may be from Lot sales or Borrower's direct payments) in the minimum amount of $40,000.00 prior to June 30, 2009 and (c) the expiration of this Agreement will extend to January 4, 2010 provided the Borrower makes principal reductions in the Loan (which may be from Lot sales or Borrower's direct payments) in the additional minimum amount of $120,000.00 prior to September 30, 2009. No renewal or further extension of this Agreement, the Loan or Lender's forbearance is agreed to or promised beyond the foregoing dates. The parties expressly acknowledge that the originally stated maturity date of January 26, 2011 which is set forth in the Note and other Loan Documents is no longer applicable to the Loan's maturity and the foregoing expiration dates shall constitute the new maturity dates for the Loan as well as the expiration dates for this Agreement. Lender's forbearance hereunder and the receipt by Lender of the foregoing Loan principal reduction payments does not and will not cure or constitute an acknowledgement that the Loan default(s) have been cured and is not a waiver of any of Lender's rights or remedies which are now or hereafter available to Lender as a result of such default(s). Upon the dates specified herein this Agreement shall expire without notice and be of no further force or effect. Borrower and Guarantor acknowledge that from and after 11:59 p.m. on the date this Agreement expires Lender shall have no obligation to further forbear or postpone the pursuit of any of Lender's rights and remedies under the Loan Documents or otherwise at law or equity. Upon (a) default by Borrower and/or Guarantor hereunder or (b) expiration of this Agreement, and upon the written demand of Lender given to Borrower and Guarantor in the sole and absolute discretion of Lender: (a) Borrower shall execute and deliver a deed in lieu of foreclosure to a grantee designated by Lender ("Grantee") which deed shall be in a form specified by the Grantee which shall vest Grantee with all right, title and interest held by Borrower in the real property that constitutes collateral for the Loan at the time such deed is delivered, and, if specified in Lender's written demand, (b) Borrower and Guarantor, as their interests may appear shall execute and deliver to the Grantee, such instruments as are required by Grantee to vest Grantee with all right, title and interest held by Borrower and Guarantor in all tangible and intangible personal property that constitutes collateral for the Loan at the time such instruments are delivered.

8.    **CONSTRUCTION/BINDING EFFECT**: This Agreement shall be binding, jointly and severally upon Borrower, Guarantor and their respective heirs, successors, legal representatives and assigns. This Agreement is not intended to and shall not be construed to constitute a modification of any term or provision of the Note, Mortgage and other Loan Documents. Further, the Borrower and Guarantor acknowledge that Lender has not waived any right, remedy, or cause of action against Borrower or Guarantor by executing this Agreement and that Lender has only promised to forbear from accelerating the entire debt including accrued but unpaid interest due to Lender and forbear from foreclosing upon the collateral for the Loan which Lender holds only so long as Borrower and Guarantor perform in strict accordance with each and every provision of this Agreement.

9.    **ABSENCE OF DEFENSES TO ENFORCEMENT/BANKRUPTCY STAY RELIEF**:    The Borrower and Guarantor hereby acknowledge and agree that the

Mortgage, Note and the other Loan Documents and the Original Forbearance Agreement are valid and enforceable in accordance with their terms and that neither the Borrower nor Guarantor has any defenses (whether legal or equitable), counterclaims (whether compulsory or permissive), or direct claims against Lender ( nor Lender's officers, directors, shareholders, employees, agents and counsel) of any type whether related to the Loan or not, or offsets of any kind or nature against the Lender under the Note, Mortgage, the Loan Documents, the Original Forbearance Agreement or otherwise. To the extent Borrower or Guarantor have any such defenses, counterclaims, direct claims or offsets they are hereby waived and extinguished in consideration of the Lender's continued forbearance hereunder and the other covenants set forth herein. In consideration of Lender entering into this Agreement and forbearing from acting on Borrower's Loan default, the Borrower and Guarantor agree and hereby stipulate that any of them file for bankruptcy protection, the automatic stay should at the request of the Lender be immediately lifted or modified in a fashion which permits Lender to proceed with its foreclosure action, a judicial foreclosure sale and its other creditor remedies under the Loan Documents. Relief from the bankruptcy stay should be afforded Lender for a number of reasons including the fact that the Borrower, as owner of the Property, is a single purpose entity, has few unsecured creditors and it is highly unlikely that any significant benefit to unsecured creditors will be achieved by bankruptcy reorganization. Borrower and Guarantor hereby agree that the filing of a bankruptcy proceeding under any chapter of the Bankruptcy Code will be for the sole purpose of delaying the Lender in pursuing its foreclosure and other legal and equitable remedies and will constitute a bad faith bankruptcy filing under the Bankruptcy Code.

10. **COERCION.** Borrower and Guarantor acknowledge and confirm that each has entered into this Agreement freely, willingly, and with knowledge of their respective liability hereunder and under the Note, Mortgage, and other Loan Documents. The persons executing this Agreement individually and on behalf of the entities that are signatories do represent and warrant to Lender that they are experienced, mature, knowledgeable and sophisticated business people familiar with loan matters and borrowing transactions and that they have had the advice of one or more attorneys of their choice prior to executing this Agreement and that they have procured the advice of independent counsel of their choice before executing this Agreement.

11. **GOVERNING LAW:** This Agreement shall be interpreted, governed by and construed in accordance with the laws of the State of Florida.

12. **WAIVER, MODIFICATION AND AMENDMENT:** No modification or amendment of this Agreement, its terms or conditions shall be valid unless reduced to writing and signed by the parties hereto. In addition, no obligation, term, provision, or condition of this Agreement may be waived unless said waiver is reduced to writing and signed by the party making such waiver.

13. **INTEGRATION AND BINDING EFFECT:** This Agreement together with such documents as are executed to implement this Agreement supersede any and all other agreements and understandings, whether oral or in writing between the Lender and the Borrower and Guarantor including but not limited to the original Forbearance Agreement and all prior amendments thereto and to any other agreements or understandings applicable to Lender's

forbearance from acceleration and foreclosure of the Loan, Lender's restructuring of the Loan, Lender's extension of the maturity of the Loan, Lender's refinancing of the Loan or Lender's procurement of a participant lender for the Loan.     This Agreement shall bind and inure to the benefit of the successors, heirs, assigns, and legal representatives of the parties hereto. This Agreement shall be binding jointly and severally upon the all persons and entities collectively constituting the Borrower and Guarantor.

14.   **AGREEMENT CONSTRUCTION:**   Neither this Agreement nor any provision hereof nor any provision of any other document executed to implement this Agreement shall be construed more harshly or disfavorably against the party drafting the same or against any party for whose benefit a particular provision is included herein.

15.   **SURVIVAL OF OBLIGATIONS AND LENDER'S RIGHTS:** Neither the execution of this Agreement nor any document required to implement this Agreement shall be deemed to extinguish any claims which Lender now or may in the future have under the Note, Mortgage or any other Loan Document or in any way constitute a release of Borrower or Guarantor or a modification of the Borrower's or Guarantor's obligations to Lender. Specific releases and/or satisfactions and/or modifications, all of which must be in writing, shall be the sole evidence of such extinguishment or release or modification. The Borrower and each person or entity collectively constituting the Guarantor acknowledge that the Lender shall have the right, but not the obligation, to sell (in whole or in part including, without limitation, syndications and participations) the Loan and all the Loan Documents and all of Lender's rights and interests under this Agreement to any person or entity. In conjunction with any such sale and at all times after the completion of a sale or otherwise, the Borrower and each person or entity collectively constituting the Guarantor hereby agree on an ongoing basis  (a) to  hold the Lender (its officers, directors, shareholders, employees, agents and counsel) harmless from any claim which the Borrower or any Guarantor has or could have in conjunction with such sale; (b) to the release by the Lender of all financial information and due diligence with respect to the Borrower, Guarantor and the Property to any purchaser without notice to or further authorization of Borrower or Guarantor; and (c) to cooperate with Lender and any purchaser in conjunction with any such sale including, without limitation, providing updated estoppel information with respect to the Loan and such other certificates as Lender or purchaser shall require.

16.  **STATUS OF PARTIES:** Nothing contained herein and no conduct or activity by Lender  hereafter shall be construed as creating a joint venture, partnership, tenancy in common, principal and agent, management, consultant, advisor, fiduciary or trustee relationship between Lender on the one hand and Borrower or Guarantor on the other.  The Borrower and Guarantor acknowledge and agree that Lender disbursed the USH Sale Proceeds as Loan principal re-advances solely as a creditor and lender to the Borrower pursuant to the Original Forbearance Agreement and pursuant to Borrower's express requests for funding to pay expenses of the Club Property and Facilities, Borrower's bona fide operating expenses and Lot marketing expenses. Borrower and Guarantor reaffirm that Lender made these Loan principal advances with the Borrower's and Guarantors' express understanding and agreement that all such funding activity and all other actions by the Lender, did not make and will not make the Lender any type of

participant, partner, manager, advisor, consultant, joint venturer, tenant at common, trustee or fiduciary (a) in or as to the Borrower or (b) in the Property's or the Club Property and Facilities' management, operation, or business decision making. Borrower and Guarantor acknowledge and agree that the Lender has had at all times in the past and shall have at all times in the future, a continuing valid objection to anything contained in any document or any form of written or oral communication which may at any time occur between the parties or their agents which directly or indirectly suggests or asserts otherwise. Borrower and Guarantor acknowledge and agree that Lender has not in the past and is not obligated to and will not in the future, provide any supervision or other services to the Borrower, the Guarantor or to those persons or entities involved in the management, operations or marketing of the Property or the Club Property and Facilities or otherwise and that the ability of Borrower and Guarantor to comply with and fulfill their obligations under this Agreement will be solely determined by their conduct and the economic benefits resulting from future Lot sales procured by and through the efforts of the Borrower, the Guarantor and their designated management and marketing personnel.

17. **VENUE/FEES**: Venue for any litigation arising hereunder or in connection herewith including any arising under or in connection with the Note, Mortgage or any other Loan Document shall be in Osceola County, Florida unless the Lender elects otherwise. If this Agreement is placed into the hands of any attorney for enforcement or for collection of any obligation arising hereunder or under the Note, Mortgage or other Loan Documents, Borrower shall pay all costs arising in connection therewith together with all attorneys' fees at the trial and appellate levels and in connection with any bankruptcy or post judgment proceedings.

18. **WAIVER, MODIFICATION AND AMENDMENT:** No modification or amendment of this Agreement, its terms or conditions shall be valid unless reduced to writing and signed by the parties hereto. In addition, no obligation, term or condition can be waived unless said waiver is reduced to writing and executed by the party making said waiver.

19. **JURY TRIAL WAIVER:** Lender, Borrower and Guarantor each knowingly, voluntarily, and intentionally waive any right they may have to a trial by jury, with respect to any litigation or legal proceedings based on, or arising out of this Agreement and all documents that are executed to implement this Agreement, including any course of conduct, course of dealings, verbal or written statements, or actions or omissions of any party which in any way relates to the Loan.

20. **COUNTERPARTS/DELIVERY OF ORIGINAL.** This instrument may be executed counterparts by the signatories hereto and each such counterpart shall have the force and effect of an original. Delivery of an executed copy of this instrument via facsimile or electronic mail shall constitute delivery of an original.

SIGNATURES ON FOLLOWING PAGES

Witnesses as to Lender:

Print Name: SAFDAN ALI

Print Name: JEFFREY ANDREW WELLS

SEACOAST NATIONAL BANK

BY: _____

Fred Roxas, Executive Vice President

Witnesses as to Borrower:

PARADISE PALMS, L.L.C., a
Florida limited liability company

BY: U.S. Enterprises of CF, L.L.C., a
Florida limited liability company,
Member/Manager

BY: U.S. Enterprises of Central Florida
Corp., a Florida corporation,
Member/Manager

By: _____

Andrew LaRosa, President

Print Name: SAFDAN ALI

Print Name: JEFFREY ANDREW WELLS

Witnesses as to Guarantors:

Paradise Palms Amended Forbearance Agr V6   9

Print Name: _____

Andrew LaRosa

Print Name: J Rojcus

Witnesses as to Guarantors:

Print Name: SAFDAR AL

Ronald Abate

Print Name: JEFFREY ANDREW WELLS

Print Name: SAFDAR ALI

Joseph Rogers

Print Name: JEFFREY ANDREW WELLS

U.S. Enterprises of Central Florida Corp, a
Florida corporation

BY: _____

Andrew LaRosa, President

Print Name: SAFDAR ALI

Print Name: JEFFREY ANDREW WELLS

U.S. Enterprises of C F, L.L.C., a Florida
limited liability company

BY:   U.S. Enterprises of Central Florida
      Corp., a Florida corporation,
      Member/Manager

By: _____
              Andrew LaRosa, President

Print Name: _SAFDAR ALI_

Print Name: _JEFFREY ANDREW WELLS_

STATE OF FLORIDA
COUNTY OF MARTIN

        The foregoing instrument was acknowledged before me this 25th day of March, 2009,
by FRED ROXAS as Executive Vice President of SEACOAST NATIONAL BANK, (PLEASE
CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [ ] who has
produced _FL Drivers License_ (TYPE OF IDENTIFICATION) as
identification.

_JEFFREY ANDREW WELLS_
(Print Name)
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

(SEAL)

JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.

STATE OF FLORIDA
COUNTY OF _Osceola_

The foregoing instrument was acknowledged before me this 26th day of March, 2009, by ANDREW LAROSA, as President of U.S. ENTERPRISES OF CENTRAL FLORIDA CORP., a Florida corporation, as Member/Manager of U.S. ENTERPRISES OF CF, L.L.C., a Florida limited liability company, as Member/Manager of PARADISE PALMS, L.L.C., a Florida Limited Liability Company, on behalf of said company (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [X] who has produced _FL. DRIVERS LICENSE_ (TYPE OF IDENTIFICATION) as identification.



JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.

_____
(Print Name) JEFFREY ANDREW WELLS
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

STATE OF FLORIDA
COUNTY OF Osceola

The foregoing instrument was acknowledged before me this 26th day of March, 2009, by ANDREW LAROSA, as Guarantor (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [X] who has produced _FL DRIVERS License_ (TYPE OF IDENTIFICATION) as identification.

_____
(Print Name) JEFFREY ANDREW WELLS
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

SEAL
JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.

STATE OF FLORIDA
COUNTY OF Osceola

The foregoing instrument was acknowledged before me this 26th day of March, 2009, by RONALD ABATE, as Guarantor (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [X] who has produced _FL Drivers License_ (TYPE OF IDENTIFICATION) as identification.



JEFFREY ANDREW WELLS
(Print Name)
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

(SEAL)

JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611108
Bonded Through National Notary Assn.

STATE OF FLORIDA
COUNTY OF Osceola

The foregoing instrument was acknowledged before me this 25th day of March, 2009, by JOSEPH ROGERS, as Guarantor (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [✓] who has produced FL DRIVERS LICENSE (TYPE OF IDENTIFICATION) as identification.

JEFFREY ANDREW WELLS
(Print Name)
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.
(SEAL)


STATE OF FLORIDA
COUNTY OF Osceola

The foregoing instrument was acknowledged before me this 25th day of March, 2009, by ANDREW LAROSA, as President of U.S. ENTERPRISES OF CENTRAL FLORIDA CORP., a Florida corporation, on behalf of said corporation, as Guarantor (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [✓] who has produced FL DRIVERS LICENSE (TYPE OF IDENTIFICATION) as identification.



JEFFREY ANDREW WELLS
(Print Name)
NOTARY PUBLIC, State of Florida
Commission Number:
My Commission Expires:

(SEAL)

JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.

STATE OF FLORIDA 
COUNTY OF _____

The foregoing instrument was acknowledged before me this _25th_ day of March, 2009, by ANDREW LAROSA, as President of U.S. ENTERPRISES OF CENTRAL FLORIDA CORP., a Florida corporation, as Member/Manager of U.S. ENTERPRISES OF CF, L.L.C., a Florida limited liability company, on behalf of said company, as Guarantor (PLEASE CHECK ONE OF THE FOLLOWING) [ ] who is personally known to me or [X] who has produced _FL DRIVERS LICENCE_ (TYPE OF IDENTIFICATION) as identification.



(Print Name) _JEFFREY ANDREW WELLS_
NOTARY PUBLIC, State of Florida

(SEAL)                    Commission Number:
                          My Commission Expires:

JEFFREY ANDREW WELLS
Notary Public - State of Florida
My Commission Expires Nov 1, 2010
Commission # DD 611106
Bonded Through National Notary Assn.